## SHOMBERG v. UNITED STATES.

No. 48.  Argued March 1, 1955.—Decided April 4, 1955.

*Alan Y. Cole* argued the cause for petitioner.  With him on the brief was *Max Schultz.*

*Gray Thoron* argued the cause for the United States.  With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Olney, L. Paul Winings* and *Lorraine Wall Hurney.*

Mr. Justice Clark delivered the opinion of the Court.

The precise issue in this proceeding is whether petitioner, who filed his petition for naturalization two days before the effective date of the Immigration and Nationality Act of 1952, 66 Stat. 163, 8 U. S. C. § 1101 *et seq.*, may compel a final hearing on the same before the determination of deportation proceedings instituted after the effective date of the Act and based solely on grounds initiated by that Act. The "priority provision" of the Act, § 318, states "no petition for naturalization shall be finally heard . . . if there is pending against the petitioner a deportation proceeding." 66 Stat. 244, 8 U. S. C. § 1429.[1] But petitioner claims that the savings clause of the Act, § 405, 66 Stat. 280, 8 U. S. C. § 1101, note, which we considered in *United States* v. *Menasche, ante,* p. 528, preserves his eligibility for citizenship under prior law, and that final hearing thereon cannot be delayed by reason of the pendency of the subsequently instituted deportation action. Both the trial court, 115 F. Supp. 336, and the Court of Appeals, 210 F. 2d 82, decided against the petitioner. We granted certiorari, 348 U. S. 811, in order to determine the relationship between § 318 and § 405 of the 1952 Act.

On October 1, 1952, petitioner submitted to the Immigration and Naturalization Service a preliminary application to file a petition for naturalization, Form N–400.

---

[1] The text of this provision, in material part, is as follows:

"Sec. 318. . . . Notwithstanding the provisions of section 405 (b), and except as provided in sections 327 and 328 no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this or any other Act; and no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act: . . . ."

Following a preliminary examination, he filed his petition for naturalization on December 22, 1952, two days before the effective date of the Immigration and Nationality Act of 1952. The prenaturalization investigation disclosed that petitioner had a criminal record; he had been convicted of grand larceny in 1913 and of manslaughter in 1915. Section 241 (a) of the 1952 Act subjects aliens to deportation if they are convicted "at any time after entry . . . of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." 66 Stat. 204, 8 U. S. C. § 1251 (a)(4). On June 22, 1953, a warrant of arrest was issued against petitioner, based on his 1913 and 1915 convictions, charging as grounds for deportation petitioner's presence in the country in violation of § 241 (a)(4). The deportation proceedings were in progress when on July 28, 1953, petitioner, through an order to show cause filed in this case, moved to compel a final hearing on his petition for naturalization, and, in the interim, to stay the deportation proceedings. Relying on § 318, *supra*, the district judge denied the motion and the Court of Appeals affirmed.

Petitioner's main argument is that under § 405 (a) nothing contained in the new Act, "unless otherwise specifically provided therein, shall be construed to affect . . . any status, condition, right in process of acquisition . . . done or existing, at the time this Act shall take effect." Petitioner was eligible for citizenship under the prior law and remains eligible under the new Act. But under the prior law petitioner was not deportable. Petitioner argues that the deportation proceeding, based solely on § 241 (a) of the new Act,[2] is adversely affecting a right protected by § 405 (a), to wit, his inchoate right to citizen-

---

[2] It is assumed for the purposes of this proceeding that petitioner *is* deportable under § 241 (a). See note 3, *infra*.

ship. This, he claims, is in direct contravention of the terms of § 405 (a) unless some other section in the Act "otherwise specifically provide[s]." Section 318, advanced as just such an exception, says "Notwithstanding the provisions of section 405 (b) . . . ," and makes no mention of § 405 (a). Thus, petitioner concludes, § 318 is not a specific exception to the protection afforded his rights by § 405 (a), and if he is to vindicate his rights under that section he must prevail in the present proceedings.

We agree with petitioner that, absent a specific provision to the contrary, he has rights protected by § 405 (a). These stem from the filing of his Form N–400, from his petition for naturalization, and, perhaps, from his fulfillment of the five-year residence requirement. *United States* v. *Menasche, supra.* But we hold that § 318 specifically excepts rights under the prior law from the protection of § 405 when these rights stem from a petition for naturalization or from some other step in the naturalization process.[3]

The practice previous to the enactment of a priority provision in the immigration and nationality laws was for both the deportation and naturalization processes to proceed along together until either petitioner's deportation or naturalization *ipso facto* terminated the possibility of the other occurring. See *United States* v. *Waskowski,* 158 F. 2d 962. And in the few instances where deportations were stayed in order to permit aliens to obtain a

---

[3] This is not to say that petitioner cannot challenge the authority of the Attorney General to deport him under § 241 (a) of the 1952 Act. We express no opinion as to whether such a challenge, grounded on the savings clause or otherwise, might succeed if made in the deportation proceedings. Whether the question of deportability could be raised in a naturalization proceeding was expressly waived by the petitioner. See Petitioner's Brief, p. 7.

hearing under a recently enacted naturalization provision, the remedy was by habeas corpus after the termination of the deportation proceedings and after a stay had been denied in those proceedings. *United States ex rel. Walther* v. *District Director of Immigration and Naturalization,* 175 F. 2d 693; *Petition of Kavadias,* 177 F. 2d 497. But as a general rule stays were not utilized, cf. *Klig* v. *Watkins,* 84 F. Supp. 486, and there ensued a race between the alien to gain citizenship and the Attorney General to deport him. If the alien was successful in forcing a final hearing and the granting of his naturalization petition, the deportation proceedings were completely nullified. To remedy this situation, the Congress incorporated § 27 in the Subversive Activities Control Act of 1950, 64 Stat. 1015, 8 U. S. C. (1946 ed., Supp. V) § 729 (c). This section prohibited naturalization or the holding of final hearings on naturalization petitions where deportation proceedings were instituted "under the provisions of this or any other Act." The 1950 Act took effect immediately and contained no savings clause, although it introduced new grounds for deportation which were to be retroactively applied. See *Galvan* v. *Press,* 347 U. S. 522. And in *United States ex rel. Jankowski* v. *Shaughnessy,* 186 F. 2d 580, the priority provision— § 27—was held to apply to naturalization petitions filed before the effective date of the Act, even though the deportation proceedings were commenced, as here, under the new statute.

Section 318 of the Immigration and Nationality Act of 1952 re-enacted § 27 in substantially the same form, retaining the language of its predecessor in suspending final hearings on naturalization where deportation proceedings were instituted *under this or any other Act.* But petitioner contends that this plain language does not apply to his case because Congress did not specifically

exempt § 318 from the operation of the savings clause embodied in § 405 (a), under which his inchoate right to citizenship is preserved. ·

It is true that § 318 begins with the phrase "Notwithstanding the provisions of section 405 (b)," which at first glance might indicate that it was intended not to apply to § 405 (a). But further analysis renders this position untenable. The same priority section had been inserted as an emergency provision in the Subversive Activities Control Act of 1950, and had been given immediate prospective and retroactive effect. It was carried forward almost verbatim as § 318 in the 1952 Act. And to make certain that it would apply to rights existing under petitions for naturalization, the Congress added to § 318 the phrase "Notwithstanding the provisions of section 405 (b)," referring to the only part of the savings clause which deals explicitly with the law applicable to naturalization petitions. The congressional purpose must have been to have § 318 supersede rights stemming from such petitions, for under any other interpretation its previous approach under the 1950 law is unexplainedly reversed and the "notwithstanding" clause is rendered meaningless. It may be that the draftsmen could have been more exact in their language, since § 405 (a), as well as § 405 (b), embraces rights under pending petitions, see *United States* v. *Menasche, supra.* But we think their intent is plain enough.

Petitioner contends that this application of § 318 will have the result of affording more protection to pre-petition rights of the *Menasche*-type than to inchoate rights under a petition for naturalization itself, since the former are not embraced within § 405 (b). But we do not believe § 318 differentiates between these steps in the process of naturalization. Each is but part of the whole process leading to citizenship and each is subject to the provisions of § 318.

Nor can we accept petitioner's argument that Congress intended § 318 to apply only to deportation proceedings based on grounds existing under the prior law. In making this contention, petitioner gives away nothing and gains nothing. If the grounds for deportation are the same under the prior law as under the new Act, then nothing in the new Act *affects* petitioner; it is clear that rights under the savings clause have not been infringed even if there is no specific exception. Only where something in the new law introduces a change, thereby affecting one's status under the old law, is the savings clause called into play. Only then is a specific exception to § 405 required. Thus, if petitioner's construction were to prevail, the "notwithstanding" language in § 318 would be as meaningless as under the interpretation previously advanced and rejected. The "notwithstanding" clause takes on meaning only when we assume that the new Act has made some change in the law to which the "notwithstanding" statement is noting a specific exception. That is this case.[4]

The role thus played by § 405 (b) is in substantial accord with the operation of its predecessor, § 347 (b) of the Nationality Act of 1940, 54 Stat. 1168, 8 U. S. C. (1946 ed.) § 747. It was pointed out in *Menasche, supra,* that § 347 (b), with its two-year limitation, was considered to be a special limitation on the rights preserved by subsection (a) of that savings clause. The two-year period has been deleted in § 405 (b), but the subsection

---

[4] Petitioner's further argument, that a change in the punctuation of § 318 resulted in the application of the "notwithstanding" clause to final findings of deportability but not to pending proceedings, must be rejected. When viewed against the purpose of the clause, the circumstances surrounding the controverted change, and the usual rules of proper punctuation, the contention is shown to be without substance.

remains a special limitation on the broad savings provision, bringing to bear the specific exceptions found in § 318 and other provisions of the new Act whenever the protection of § 405 (a) is sought for rights connected with the naturalization process.[5]

In our view, § 405 (b) is the vehicle for applying each of these exceptions to the rights and liabilities emerging from naturalization proceedings under prior law and otherwise preserved by § 405 (a). In using the "notwithstanding" language in these sections, Congress clearly manifested its intent that certain policies should override the otherwise broad and pervasive principle of the savings clause. In *United States* v. *Menasche, supra,* we recognized the wide scope to be given the savings clause. We would be lax in our duty if we did not give recognition also to the congressional purpose to override the savings clause when other considerations were thought more com-

---

[5] Section 311 provides that the right to naturalization shall not be abridged because of race, sex or marriage, and, "[n]otwithstanding section 405 (b), this section shall apply to any person whose petition for naturalization shall hereafter be filed, or shall have been pending on the effective date of this Act." 66 Stat. 239, 8 U. S. C. § 1422.

Section 313 (a) states: "Notwithstanding the provisions of section 405 (b), no person shall hereafter be naturalized" who engages in specified subversive activities or who is a member of described subversive organizations. 66 Stat. 240, 8 U. S. C. § 1424 (a).

Section 315 (a) provides: "Notwithstanding the provisions of section 405 (b)," one who claims or has claimed his alienage and "is or was" thereby relieved of service in the armed forces, "shall be permanently ineligible to become a citizen." 66 Stat. 242, 8 U. S. C. § 1426 (a).

Section 331 (d) provides for the ending of enemy alien status and states: "Notwithstanding the provisions of section 405 (b), this subsection shall also apply to the case of any such alien whose petition for naturalization was filed prior to the effective date of this Act and which is still pending on that date." 66 Stat. 252, 8 U. S. C. § 1442 (d).

pelling than the preservation of the *status quo.* If we are not to nullify this clear legislative purpose and render meaningless the "notwithstanding" language of § 318 and the other sections, we must find for the Government and hold that § 318 bars petitioner's attempt to compel a hearing on his naturalization petition while the deportation proceeding is pending.

*Affirmed.*

MR. JUSTICE HARLAN took no part in the consideration or decision of this case.