236 F.2d 955
 Petition of Guiseppe CATALANOTTE for a Writ of Habeas Corpus.
Guiseppe CATALANOTTE, Petitioner-Appellant,
v.
James W. BUTTERFIELD, District Director of Immigration and Naturalization Service, Detroit District, Respondent-Appellee.
 No. 12729.
 United States Court of Appeals Sixth Circuit.
 August 27, 1956.
 Writ of Certiorari Granted November 19, 1956.
 
 See 77 S.Ct. 215.
 Louis M. Hopping, Detroit, Mich., for appellant.
 Dwight K. Hamborsky, Asst. U. S. Atty., Detroit, Mich., Fred W. Kaess, U. S. Atty., Detroit, Mich., for appellee.
 Before ALLEN, McALLISTER, and MILLER, Circuit Judges.
 McALLISTER, Circuit Judge.
 
 
 1
 In 1925, appellant was convicted on a charge of violating the narcotics law. He was sentenced to imprisonment for a term of sixty days and ordered to pay a fine of $1,000. He served the sentence and paid the fine.
 
 
 2
 After his conviction, and after he had served the above sentence, he married a young Italian woman who has since become a naturalized citizen. He has two daughters. The older daughter, now twenty-seven years old, has been an invalid since she suffered infantile paralysis at the age of fourteen months. Appellant is the sole support of his wife and children.
 
 
 3
 Thirty years subsequent to his conviction, in August, 1954, appellant was ordered deported by the Board of Immigration Appeals for the offense which he committed in 1925. From the order of deportation, appellant sought review by way of a petition for a writ of habeas corpus; and from an order of the district court denying his petition, he appeals.
 
 
 4
 The deportation proceedings are based upon the Immigration and Nationality Act of 1952. Section 241(a) (11)[1] of that statute provides:
 
 
 5
 "Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who * * * is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of any law or regulation relating to the illicit traffic in narcotic drugs, or who has been convicted of a violation of any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation of opium or coca leaves or isonipecaine or any addiction-forming or addiction-sustaining opiate." (Emphasis supplied.)
 
 
 6
 The government contends that, upon proof that appellant was convicted of a violation of a law relating to the illicit traffic in narcotic drugs in 1925, he is, under the above section of the statute, deportable, and that the district court properly denied his petition for a writ of habeas corpus, which was the method adopted to review the decision of the Board of Immigration Appeals.
 
 
 7
 Appellant's defense to the proceedings for deportation is founded upon the so-called "savings clause" of the Immigration and Nationality Act of 1952. Section 405(a)[2] of the statute provides:
 
 
 8
 "Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, * * * warrant of arrest, order or warrant of deportation, * * * which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes,[3] conditions, rights, acts, things, liabilities, obligations, or matters, the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * *" (Emphasis supplied.)
 
 
 9
 Appellant claims that prior to the enactment of the Immigration and Nationality Act of 1952, he had a nondeportable status and that, by virtue of the above mentioned savings clause, such nondeportable status was not affected by any other provision of such Act, inasmuch as it was not specifically provided therein that the statute should be construed to affect such status. The record discloses that appellant, prior to the Act of 1952, had the status of a nondeportable alien. The Board of Immigration Appeals, in its decision in the instant case, properly found from the evidence that: "The respondent actually did not become deportable, because of the 1925 conviction, until the effective date of the Immigration and Nationality Act (December 24, 1952)."
 
 
 10
 United States ex rel. Carson v. Kershner, 6 Cir., 228 F.2d 142, 144, involved an alien who had entered the United States as a stowaway in 1919, and achieved nondeportable status at the end of five years' residence in this country. He later had been convicted of two separate offenses, but had again achieved a nondeportable status, under the law then in effect, by a conditional pardon as to the second offense. In deportation proceedings, brought under the 1952 Act, this court, in an able and comprehensive opinion by Judge Stewart, held that such an alien was protected in his nondeportable status by the general savings clause in the Immigration and Nationality Act of 1952, notwithstanding certain other provisions of the Act which would otherwise operate to deprive him of such nondeportable status. In the Kershner case, the court had before it a section of the statute relating to stowaways, providing that "`Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who — (1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry'". Moreover, with regard to the alien's deportation by reason of his two criminal convictions, a section of the statute provided that: "`Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who — * * * (4) * * * at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct * * *.'" The second section of the statute provided that: "`The provisions of [the foregoing section] respecting the deportation of an alien convicted of a crime or crimes shall not apply (1) in the case of any alien who has subsequent to such conviction been granted a full and unconditional pardon by * * * the Governor of any of the several States * * *.'" (Emphasis supplied.) Considering the above cited statutory provisions, standing alone, the court said that they would require affirmance of the district court's order denying a writ of habeas corpus, or, in other words, that the alien would, under the quoted statutory provisions, have no defense to deportation. However, the court went on to point out that Section 405 of the Immigration and Nationality Act of 1952 contained a broad general savings clause, and that this clause preserved the alien's status of nondeportability "`unless otherwise specifically provided'" in the Act. Since the Act did not specifically provided that the alien's status of nondeportability was not preserved, the court held he was not deportable.
 
 
 11
 In United States v. O'Rourke ex rel. De Luca, 8 Cir., 213 F.2d 759, an alien who, in 1943, had been twice convicted of violation of the law relating to illicit traffic in narcotic drugs, had acquired the status of a nondeportable alien by virtue of the recommendations to the district judge against deportation under Title 8 U.S.C., Section 155(a), 1940 Ed. Under the 1952 Act, deportation proceedings were brought under the same sections of the statute relied upon by the government to deport Catalanotte in the instant case. The court of appeals held that the alien could not be deported under the 1952 Act since he had previously acquired the status of a nondeportable alien, and that such status was protected by the savings clause contained in Section 405 of the Act, since there was no specific provision in the Act that operated to deprive him of such status.
 
 
 12
 We are confronted with the same general savings clause in the instant case. While the pertinent provision of the statute provides that "Any alien * * * shall, upon the order of the Attorney General, be deported who * * * is, or hereafter at any time after entry * * * has been convicted of a violation of any law or regulation relating to the illicit traffic in narcotic drugs * * *," such provision does not apply to an alien who, prior to the enactment of the statute, had acquired a status of nondeportability, unless, under Section 405 of the Act, it was specifically provided that such status should not be preserved. It was not specifically provided in the Act that appellant's prior status of nondeportability should be set aside. "The savings clause is to be interpreted as protecting status acquired under prior legislation, unless the intent to withdraw that protection is manifestly clear. It was held in [Shomberg v. United States, 348 U. S. 540, 75 S.Ct. 509, 99 L.Ed. 624][4] that such intent is clear where it is specifically provided that a provision shall be effective `notwithstanding' the terms of the savings clause. No such clear manifestation of intent is apparent in the present case." United States v. Kershner, 6 Cir., 228 F.2d 142, 146.
 
 
 13
 In the long and complex provisions in the Immigration and Nationality Act, if there be deemed to exist any reasonable doubt as to whether Congress intended to make an alien deportable, that doubt should be resolved in his favor. Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433. It was said in United States ex rel. De Luca v. O'Rourke, 8 Cir., 213 F.2d 759, 765: "It seems apparent that the controlling question in this case can be put at rest only by the Supreme Court or by an amendment to the Act. We feel justified in ruling that there is no clearcut authority in the Act for depriving [the alien] of the status of a nondeportable alien * * *."
 
 
 14
 We conclude that Catalanotte's status of nondeportability is protected by Section 405 of the Act, since the statutory provisions upon which the government relies do not constitute such specific exceptions to Section 405 as are contemplated in that Section in order to make it inapplicable.
 
 
 15
 It is unnecessary to discuss appellant's claim that the Immigration and Nationality Act of 1952, in its application to him in seeking to make his prior conduct grounds for deportation, is an ex post facto law and, therefore, unconstitutional; but this court has held to the contrary. United States v. Kershner, 6 Cir., 228 F.2d 142, 144, 145. Marcello v. Bonds, 349 U.S. 302, 75 S.Ct. 757, 99 L. Ed. 1107, cited by the government, is not here applicable since it is not concerned with the savings clause which is the provision of the statute that controls disposition of this case.
 
 
 16
 The judgment appealed from is reversed and the case is remanded with directions to discharge Catalanotte from custody under the order and warrant for deportation.
 
 
 
 Notes:
 
 
 [1]
 66 Stat. 204, Title 8, U.S.C.A., § 1251(a) (11)
 
 
 [2]
 See Title 8, U.S.C.A. § 1101 note
 
 
 [3]
 Probably should read "statuses." See Title 8, U.S.C.A. § 1101 note
 
 
 [4]
 The Supreme Court, in the Shomberg case, pointed out five cases in the 1952 Act where Congress had clearly manifested its intention that certain policies should override the otherwise broad and pervasive principle of the savings clause. 348 U.S. at page 547, 75 S.Ct. at page 512