In re Miguel MUNIZ.
Misc. No. 1966.

United States District Court
W. D. Pennsylvania.
Dec. 27, 1956.

**174**

---

Louis Glasso, Pittsburgh, Pa., for petitioner.

D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., for defendant.

JOHN L. MILLER, District Judge.

█ Petitioner, an alien, seeks to obtain a hearing upon his petition for naturalization which has been pending in this court since February 12, 1951. A previous hearing upon the petition, filed under § 310(b) of the Nationality Act of 1940,[*] was held before our late associate, the Honorable William Alvah Stewart, on or about August 22, 1952. Although petitioner was at that time recommended for citizenship by a designated naturalization examiner, Judge Stewart did not make any final determination as to whether he should be naturalized. On April 12, 1956, immigration authorities issued a rule upon petitioner to show cause why he should not be deported and as a result of ensuing proceedings, there is outstanding against him a final finding of deportability based on grounds which were first provided for in § 241 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1251(a) (4), effective December 24, 1952.

Section 318 of the 1952 Act, 8 U.S.C.A. § 1429, provides, in part, that

"* * * Notwithstanding the provisions of section 405(b) of this Act, and except as provided in sections 1438 and 1439 of this title no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter * * *; and no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act * * *."

The Supreme Court has determined that the savings clause of the statute does not prevent the application of § 318 to petitions for naturalization which were pending before the effective date of the law. Shomberg v. United States, 1955, 348 U.S. 540, 75 S.Ct. 509, 99 L. Ed. 624. In our view, § 318 will be applicable whether the petition has been pending a short time, as in the Shomberg case, or for a long time and whether the petition has once been presented to the naturalization court.

█ Unless § 318 is not applicable because the proceedings terminating in a final finding of the deportability of petitioner were begun by a rule to show cause rather than a warrant of arrest, a hearing upon the naturalization petition, if granted, could not result in his being admitted to citizenship so long as the final finding of deportability remained unchallenged. It is concluded that § 318 is applicable, notwithstanding it refers only to a "final finding of deportability pursuant to a warrant of arrest." Congress, in § 242(a), 8 U.S. C.A. § 1252(a), has authorized the issuance of warrants of arrest by the Attorney General pending a determination of the deportability of an alien but has not made such a procedure mandatory. We are told that the legislative policy in adopting § 318 was to provide for an orderly method of disposition in cases where naturalization and deportation proceedings were pending simultaneously, in contrast to the "race" for naturali-

---

[*] Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1430.

zation which prevailed under the old law. Shomberg v. United States, supra, 348 U.S. at page 544, 75 S.Ct. at page 511. In view of that policy, which accorded priority to the deportation proceedings, it is unlikely that Congress intended to discriminate in § 318 against the class of aliens as to which warrants of arrest issue and in favor of those who, like petitioner, have received a benefit permitted by § 242(a).

■ The petitioner has suggested that the court grant a hearing on the petition for naturalization and in the course of that hearing review the deportation proceedings leading to the final finding of deportability which, he contends is a nullity. At this time we do not consider his reasons for asserting that the finding of deportability is invalid. It is clear that the Immigration and Nationality Act of 1952 enables an alien for the first time to obtain judicial review of deportation proceedings in accordance with the provisions of section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868.

The pertinent provision of the latter Act states:

"(b) The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute, or, in the absence or inadequacy thereof, any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction. Agency action shall be subject to judicial review in civil or criminal proceedings for judicial enforcement except to the extent that prior, adequate, and exclusive opportunity for such review is provided by law."

Habeas corpus procedures were formerly the sole means by which aliens could attack deportation orders. Heik-

kila v. Barber, 1953, 345 U.S. 229, 73 S. Ct. 603, 97 L.Ed. 972. Now petitioner has other remedies. But, we can not view the naturalization proceeding as a proceeding "for judicial enforcement" of the final finding of deportability, even though § 318, when invoked, provides indirect enforcement by withdrawing the judicial power to naturalize, and we are not persuaded by other arguments that the naturalization proceeding is an "applicable form of legal action" within the meaning of the foregoing section.

■ Nothing has been found in the legislative history of the 1952 statute to indicate that Congress there intended to do away with the long established separation of the naturalization and deportation processes. And we can find no support in the Act itself for the petitioner's contention. Even if it is assumed that the validity of a final finding of deportability is one of the matters "touching or in any way affecting the petitioner's right to admission to citizenship" as to which there may be contested proceedings between the Attorney General and the alien, 8 U.S.C.A. § 1447(d), nevertheless, in the pending naturalization proceeding, we do not have jurisdiction over the Attorney General. Other persons situated like the petitioner have pursued their remedy under the Administrative Procedure Act by filing complaints for review and actions for declaratory judgment or injunctive relief. See Resurreccion-Talavera v. Barber, 9 Cir., 1956, 231 F.2d 524; Muscardin v. Brownell, 1955, 97 U.S.App.D.C. 16, 227 F.2d 31; Shintaro Miyagi v. Brownell, 1955, 97 U.S.App.D.C. 18, 227 F.2d 33; Fong Sen v. United States Immigration and Naturalization Service, D.C.La.1956, 137 F.Supp. 236; Cf. Di Battista v. Swing, D.C.Md.1955, 135 F. Supp. 938. The District Director of Immigration and Naturalization would be a proper party in such proceedings. Shaughnessy v. Pedreiro, supra.

[5] Petitioner has a choice as to the form of action he will pursue in order to obtain review of the determination that he is deportable, but the choice does

not include the naturalization proceeding. The petition for a hearing on the petition for naturalization will be refused but the court will direct that deportation proceedings remain in abeyance in order to permit petitioner to seek review in an appropriate manner.