256 F.2d 439
 Carl Fraser CADBY, Appellant,
v.
Joseph SAVORETTI, District Director, United States Immigration and Naturalization Service, Miami, Florida, Etc., Appellee.
Frederic Arthur BRUNT, Appellant,
v.
Joseph SAVORETTI, District Director, United States Immigration and Naturalization Service, Miami, Florida, Etc., Appellee.
 No. 17039.
 No. 17048.
 United States Court of Appeals Fifth Circuit.
 June 18, 1958.
 
 David W. Walters, Miami, Fla., for appellant.
 Richard R. Booth, Asst. U. S. Atty., Miami, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., Gilbert Zimmerman, Regional Counsel Immigration and Naturalization Service, Richmond, Va., for appellee.
 Before RIVES, CAMERON and BROWN, Circuit Judges.
 JOHN R. BROWN, Circuit Judge.
 
 
 1
 The principal question in these two cases briefed and argued together, though tried on separate records, is whether in a post-1952 deportation proceeding, the alien is entitled to have the Attorney General entertain an application for discretionary relief authorized under the 1917, but not under the 1952, Act, and, as a corollary to it, whether the Savings Clause of Section 405(a) of the 1952 Act, 8 U.S.C.A. § 1101 note affords the alien any such relief.
 
 
 2
 Deportation is on the basis that at the time of the last entry, each was excludable. Since, prior to that entry, each had had an extended residence long in excess of seven years, the relief specifically sought is that accorded by the Seventh Proviso of Section 3 of the Immigration Act of February 5, 1917 which provided:
 
 
 3
 "that aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Attorney General, and under such condition as he may prescribe."
 
 
 4
 Reliance on the 1917 Act is necessary because, in contrast to its terms which do not require seven years lawful continuous residence, that is the requirement of its counterpart Section 212(c) in the 1952 Act:
 
 
 5
 "(c) Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1)-(25), (30), and (31) of subsection (a). * * * Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b) * * *." 8 U.S.C.A. § 1182.
 
 
 6
 As it is unquestioned that the 1952 Act expressly repealed[1] the Immigration Act of 1917, the aliens attempt to circumvent that by the argument that since excludability at the time of the last entry was on the basis of the 1917 Act sauce for both goose and gander, National Rag & Waste Co. v. United States, 5 Cir., 237 F.2d 846, requires that one subject to the pains and disadvantages of the 1917 Act is entitled to its benefits. But the argument falls from the defect in the major premise.
 
 
 7
 The minute facts concerning Cadby[2] or Brunt[3] are of little consequence. Each made an illegal entry, Cadby in 1952 and Brunt in 1951, both at times prior to December 24, 1952, the effective date of the Immigration and Nationality Act of 1952. At that time each of them was subject to exclusion under the then applicable Act,[4] Section 3, Immigration Act of 1917, as a person who had been convicted of having committed a felony or other crime or misdemeanor involving moral turpitude.
 
 
 8
 But of course the sanction being asserted in these proceedings is not exclusion, it is deportation. And for deportation, it rests on the law applicable at the time deportation is asserted. This was, of course, Section 241(a) (1), 8 U.S.C.A. § 1251(a) (1), which provides:
 
 
 9
 "(a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who —
 
 
 10
 "(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry."
 
 
 11
 This was not, as the aliens would have us believe, the momentary resuscitation of the 1917 Act, whose demise was otherwise complete and final, note 1, supra, as a basis for deportation. On the contrary, it was Congress, legislating in 1952, prescribing the standards which currently would be applied. These currently prescribed standards were those which had formerly applied. This did not revive the old. The old merely became a part of the new. This was particularly true of this complex legislation which plainly reflected a comprehensive purpose to cover the past and the future, and to make much of it retroactive[5] in nature.
 
 
 12
 It should be borne in mind that we are not here dealing with the attempted deportation of aliens who subsequent to their last entry had acquired any supposed right to remain in this country. Consequently the problem reserved in Shomberg v. United States, 348 U.S. 540, 543, 75 S.Ct. 509, 99 L.Ed. 624, 628, footnote 3, is not before us. Ours is the much narrower one: since Cadby in early 1952 and Brunt in 1951 might have applied to the Attorney General for Seventh Proviso discretionary relief which, if granted, would have entitled each of them to admission on conditions specified, does that "right" continue perpetually until exhausted by an application and denial of discretionary relief?
 
 
 13
 Certainly it does not by the terms of the 1917 Act, for it was repealed, note 1, supra, and after December 24, 1952, had no further effect. The only way this result can come about is through the Savings Clause in Section 405(a) in the 1952 Act. It provides[6] that "* * * unless otherwise specifically provided * * *" for therein "nothing contained in this Act" shall be construed to affect "* * * any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing * * *, or matter * * * done or existing, at the time this Act shall take effect." Section 405(a) is unavailing for two reasons. First, the Act has "otherwise specifically provided" for this situation. In Section 212 (8 U.S.C.A. § 1182), the 1952 Act prescribes the standards of excludability, and in Section 241 (d) (8 U.S.C.A. § 1251(d)), note 5, supra, it expressly provides that deportability shall be retroactive. Similarly, the area of the Attorney General's administrative relief was sharply changed[7] under Section 212(c) of the 1952 Act. As a basis for exercise of the Attorney General's discretion, the return must be to a "lawful unrelinquished domicile" and only aliens "lawfully admitted for permanent residence" are eligible to apply. Cadby was never lawfully admitted since his felonies were committed prior to his initial entry. Brunt commenced his residence as one lawfully admitted for permanent residence, but lost that in 1944 by a valid deportation so that his return could not have been to "a lawful unrelinquished domicile of seven consecutive years."
 
 
 14
 If Congress is deemed, as the Court held it was, Lehmann v. United States ex rel. Carson, 353 U.S. 685, 77 S.Ct. 1022, 1 L.Ed.2d 1122; Lehmann v. United States ex rel. Sciria, 6 Cir., 248 F.2d 519, to have required deportation because of prior events of aliens currently enjoying residence, then the Savings Clause warrants parallel construction that the situation has been "otherwise specifically provided" for when the aliens, as here, have only a tenuous residence which, under the old law, might, if administrative relief had been sought and if sought, granted, have permitted either their return or continued stay.
 
 
 15
 Second, the Savings Clause cannot here operate because there is no "status, condition [or], right in process of acquisition." It was sometime in 1949 when Brunt made what he claims was his latest application for administrative relief. Cadby's was in 1952, the last step being the rejection by the Toronto Consulate in May 1952, note 2, supra. In no sense was either application a pending unresolved open matter. United States er rel. Zacharias v. Shaughnessy, 2 Cir., 221 F.2d 578. All that had been sought had been denied. The decision was known in each case before December 24, 1952, and no steps had been taken by either toward staying the effect of any such denial or seeking the benefit of reconsideration or rehearing. Shintaro Miyagi v. Brownell, 97 U.S.App.D.C. 18, 227 F.2d 33. Nor was the benefit of the Seventh Proviso that type of right which might be characterized as a continuing inchoate one, the mere existence of which might keep it alive. Cf. United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 and Shomberg v. United States, 348 U.S. 540, 75 S.Ct. 509, 99 L.Ed. 624; In re Pauschert's Petition, D.C.N.Y., 140 F.Supp. 485; Petitions of F____ G____ and E____ E____ G____, D.C.N.Y., 137 F.Supp. 782; Aure v. United States, 9 Cir., 225 F.2d 88; Applications of Tano, D.C.Cal., 139 F.Supp. 797, 799, affirmed 9 Cir., 237 F.2d 916. The Seventh Proviso, if effective, was not the means by which to protect or preserve anything. At best, it was the means by which certain prescribed persons were afforded an opportunity to have the Attorney General consider why the inexorable effect of the law ought not to operate with respect to their cases. It was couched in conditional and permissive terms. As a piece of legislative grace, it conveyed no rights, it conferred no status.
 
 
 16
 The District Court was correct in determining that in neither case was the alien entitled to Seventh Proviso relief in a post-1952 Act deportation proceeding.
 
 
 17
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Section 403(a) Immigration and Nationality Act of December 24, 1952, 66 Stat. 279:
 "The following Acts and all amendments thereto and parts of Acts and all amendments thereto are repealed: * * * (13) Act of February 5, 1917 (39 Stat. 874)."
 
 
 [2]
 Cadby entered the United States first in 1929 from Canada. Shortly prior to that time and while a resident and citizen of Canada he pleaded guilty and was sentenced for five separate acts of stealing and breaking and entering and stealing. His residence in the United States was continuous from 1943 to 1952. In 1952, without previous consultation with the Immigration Service, he voluntarily went to Canada with a purpose of legalizing his status. While there, he made an application for an Immigration visa to the United States Consulate, Toronto, disclosing fully his criminal record. On May 16, 1952, he received a letter from the United States Consulate, Toronto, stating that he was ineligible to receive an immigration visa because he was a person who had been convicted of crimes involving moral turpitude. A month later, in June 1952, he made the illegal entry
 
 
 [3]
 Brunt's first entry from Canada was September 28, 1929, when he was lawfully admitted for permanent residence in possession of a nonquota immigration visa. In 1933, in New York, he pleaded guilty to two charges of endangering the health and morals of a child, and in 1942 he pleaded guilty to the crime of assault, second degree, with intent to commit rape, all of which are conceded to be felonies or crimes involving moral turpitude. This resulted in his being deported in 1944. On November 28, 1949, he applied to the Attorney General for permission to return to the United States, but this was denied. On at least four occasions subsequent to 1944, the last being the entry of October 1951, he reentered the United States
 
 
 [4]
 "That the following classes of aliens shall be excluded from admission into the United States: * * * all * * * persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude: * * *."
 
 
 [5]
 E.g., Section 241(d), 8 U.S.C.A. § 1251 (d):
 "Except as otherwise specifically provided in this section, the provisions of this section shall be applicable to all aliens belonging to any of the classes enumerated in subsection (a), notwithstanding (1) that any such alien entered the United States prior to [the date of enactment of this Act], or (2) that the facts, by reason of which any such alien belongs to any of the classes enumerated in subsection (a), occurred prior to [the date of enactment of this Act]."
 
 
 [6]
 Section 405(a): "Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * * An application for suspension of deportation under section 19 of the Immigration Act of 1917, as amended, or for adjustment of status under section 4 of the Displaced Persons Act of 1948, as amended, which is pending on the date of enactment of this Act, shall be regarded as a proceeding within the meaning of this subsection." Historical Note to 8 U.S.C.A. § 1101
 
 
 [7]
 The legislative history reveals that Congress was dissatisfied with the administrative operation of the Seventh Proviso of the 1917 Act and the abuses which arose from the pre-examination and momentary departure procedure, and especially the way in which administrative interpretation seemed to discriminate in favor of those whose entry and conduct was unlawful. See S.Rep. 1137, 82nd Cong., 2d Sess., p. 12; H.Rep. 1365, 82nd Cong., 2d Sess., p. 51; "The Immigration and Naturalization Systems in the United States," S.Rep. 1515, 81st Cong., 2d Sess., p. 381-384