MATTER OF V—

In SECTION 341 Proceedings

A-12664565

*Decided by Regional Commissioner February 2, 1962*
*Approved by Assistant Commissioner February 20, 1962*

Citizenship—Acquisition at birth abroad—Section 301(a)(7) of 1952 Act—Physical presence of citizen parent—Savings clause preserves residence in outlying possession which has since become independent country.

(1) Applicant born in Philippine Islands in 1958 held to have acquired United States citizenship under section 301(a)(7) of Act through his father who was born in the United States in 1931 and resided in the Philippine Islands from September 1936 until May 1954.
(2) The term "outlying possession" as used in section 301(a)(7) includes, in addition to the territories enumerated in section 101(a)(29) of the Act, any other territory which was, in fact and in law, an outlying possession of the United States during the period of a citizen parent's physical presence therein.
(3) Citizen parent's residence in Philippine Islands from September 1936 until July 3, 1946, when they ceased to be a possession of the United States, conferred upon him the status of physical presence in an outlying possession of the United States which was preserved by section 405 of the Act.

### BEFORE THE REGIONAL COMMISSIONER

DISCUSSION: On September 28, 1961, the applicant's father applied for the issuance of a certificate of citizenship to the applicant in accordance with the provisions of section 341 of the Immigration and Nationality Act and related regulations. The record establishes that the applicant was born in the Philippine Islands, a foreign state, on January 11, 1958. His mother also was born in the Philippine Islands, and first entered the United States on January 14, 1960. She has advanced no claim to United States nationality. The applicant's father was born in Stockton, California, on February 23, 1931, and thus became a United States citizen at birth by reason of the constitutional provision. Therefore, the applicant's claim to United States citizenship must be resolved in accordance with the requirements of section 301(a)(7) of the Immigration and Nationality Act.

The issue presented in the case involves a determination as to whether or not the applicant's father, prior to the applicant's birth,

558

was physically present in the United States or its outlying possessions for at least ten years, of which period five years must have been accumulated after he arrived at his fourteenth birthday (section 301(a)(7), Immigration and Nationality Act). The evidence of record establishes that the applicant's father was continuously physically present in the United States from February 23, 1931, the date of his birth, until his departure for the Philippine Islands in September 1936, a period of physical presence totaling five years and seven months. He resided in the Philippine Islands without interruption until his return to the United States on May 3, 1954. Thereafter, he was continuously physically present in the United States until his enlistment in the United States Air Force on July 27, 1954, and he has served continuously in the Air Force since that date. Under the proviso to section 301(a)(7) of the Act, all periods of service in this country's armed forces must be considered as physical presence in the United States. Thus, the applicant's citizen father has unquestionably been physically present in the United States for an additional period of three years and eight months prior to the applicant's birth, and such physical presence was accumulated after he arrived at his fourteenth birthday.

A consideration of the total physical presence amassed by the applicant's father, permits a narrowing of the issue to the single question: Does his continuous residence in the Philippine Islands from September 1936 to July 4, 1946, when the Islands beyond dispute ceased to have the status of an outlying possession of the United States, nonetheless constitute physical presence in an outlying possession of the United States for the purposes of section 301(a)(7) of the Immigration and Nationality Act? This is the crucial question. If it is answered in the affirmative, it is mathematically certain that the father will have more than sufficient physical presence prior to the birth of the applicant to satisfy the prerequisites of section 301(a)(7) of the Act.

The record discloses that a Department of State official at the American Embassy, Manila, Philippine Islands, issued this applicant United States Passport #155733 on February 10, 1959, predicated upon a finding of citizenship acquired at birth abroad, pursuant to section 301(a)(7) of the Immigration and Nationality Act. In making the finding of citizenship, the continuous residence of the applicant's father in the Philippine Islands prior to July 4, 1946, was credited as physical presence in an outlying possession of the United States for the purpose of completing the five years' physical presence after age fourteen, which the father needed to confer citizenship upon the applicant under the section (Exhibits 5 and 6). Direct inquiry of the Department of State elicited a statement that the action taken by the American Embassy in Manila was in

complete accord with the official position of the Department. Thus it is clear that the Department of State has given an affirmative answer to the decisive question.

Administrative decisions in cases involving the acquisition of citizenship at birth abroad under sections 201(e) of the Nationality Act of 1940 (*Matter of S—*, 4—575 (1951)) and 201(g) of the same statute (*Matter of Y—*, 7—667 (1958)) have held that a parent's residence in the Philippine Islands prior to July 4, 1946, was residence in an outlying possession of the United States for the purpose of those sections. Further, it is pertinent to observe that in the decision last cited such holding prevailed even though the child beneficiary was born in 1949, when the Philippine Islands, beyond any shadow of doubt, had ceased to be an outlying possession of the United States.

The decisions cited above give no reason to suppose that a different viewpoint should prevail in the case under consideration. Indeed, the similarity in the respective factual situations would seem to prompt the opposite conclusion. Nonetheless, proper adjudication must consider first of all whether the mere language change from "residence" as used in sections 201(e) and (g) of the Nationality Act of 1940 to "physical presence" as used in section 301 (a)(7) of the Immigration and Nationality Act could conceivably require a viewpoint in the area of discussion different from that expressed in the administrative decisions. Also material to the deliberations may be the significance of the change in the statutory definition of an outlying possession of the United States which in the Nationality Act of 1940 (section 101(e)) embraces by interpretation the Philippine Islands; whereas, in the Immigration and Nationality Act (section 101(a)(29)), the definition omits all direct or implied reference to the Islands. Finally, and perhaps of the greatest importance, will be an essential evaluation of any impact which the savings clause in section 405(a) of the Immigration and Nationality Act may have upon the question at hand.

We must look to the Congressional committee reports in an effort to determine the underlying Congressional intent and purpose in substituting "physical presence" in the 1952 Act for the "residence" of the 1940 Act. Further, such reports may shed light upon why the definition of outlying possessions of the United States was modified in the current statute, and thus enable us to evaluate the significance of the modification in terms of the question before us.

Report No. 1137, 82d Congress, 2d Session, the Senate Report on S-2550, which became the 1952 Immigration and Nationality Act, reflects (page 38) that "The bill carries forward substantially those provisions of the Nationality Act of 1940 which prescribe who are citizens by birth * * *. These conditions have been re

560

defined in the bill to meet more realistically the fact that we have many members of our Armed Forces serving abroad who have married alien spouses and have children born in foreign countries." There is no indication in the committee reports that the language change was for purposes other than the elimination of troublesome problems involving "constructive" residence which had theretofore been encountered, and to make it clear that "residence" meant "physical presence" and nothing else. That the residence of the applicant's father in the Philippine Islands was in fact physical presence is clearly evident from the record. It is concluded then that the language change from "residence" to "physical presence" has no significant relationship to the question under consideration.

Of potentially greater moment in our deliberations is the change which has been made in the definition of outlying possessions of the United States. Admittedly, in eliminating all direct and indirect reference to the Philippine Islands from the new definition (section 101(a)(29)), the Congress may have intended to destroy for the purposes of the 1952 Act the former acknowledged status of the Islands as an outlying possession of the United States. Yet, the committee reports identified, *supra*, contain no language to give the slightest indication that the modified definition was other than a realistic enumeration of the outlying possessions of the United States, as they existed at the time the 1952 legislation was under consideration by the Congress. It cannot be denied that at such time the Philippine Islands had ceased to have the aforementioned status. The Islands had then become an independent nation and for such reason, obviously, could not be included in the definition. Furthermore, the phraseology of the definition finally adopted in no way specifically states or infers that it is to be applied retrospectively in the sense that it was intended to be destructive of the status of "outlying possession," as it may have been recognized throughout an earlier period under former law. In the absence of specific language to the contrary, we cannot impute to the lawmakers a desire to legislatively disregard what had previously been, in fact and law, an outlying possession of the United States.

While it appears clear that the term "outlying possessions" in section 301(a)(7) of the Immigration and Nationality Act necessarily is inclusive of those territories specifically enumerated as such in section 101(a)(29) of the same Act, it is here concluded that such term, as used in section 301(a)(7), also was intended to include any other territory which was, in fact and law, an outlying possession of the United States during the period of the citizen parent's physical presence therein. Any other construction would result in a substantial reduction in the number of children who could acquire citizenship at birth abroad to parents of mixed na-

**561**

tionality, not through any change in the substantive provisions of the law relating to the acquisition of citizenship, but through a modi-fication in a definition which was never intended to cause that result. Any other construction would belie the Congressional committee reports which indicate that the provisions of the Nationality Act of 1940 relating to the acquisition of citizenship at birth were carried forward unchanged in the Immigration and Nationality Act, save for clarifying modifications having no apparent connec-tion with or relationship to the question under consideration.

The savings clause of the Immigration and Nationality Act (sec-tion 405(a)) provides:

Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed * * * to affect any * * * status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such * * * statutes [sic—statues] conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect.

The courts, in their interpretations of the law, have always been zealous in safeguarding the rights of citizens from the sometimes unforeseen and unintended destructive effects of new legislation. In accord with this fundamental policy, they have given section 405 (a), the savings clause of the Immigration and Nationality Act, the broadest and most liberal construction holding that, by reason of its grace, many diverse procedural and substantive rights or condi-tions arising under the immigration and nationality laws were pre-served to citizen and alien alike. In *United States* v. *Menasche*, 348 U.S. 528 (1955), the Supreme Court stated that the savings clause manifests a well-established policy not to destroy advantages gained under prior laws and that the policy of preserving such rights was intended to apply to matters both within and without the specific contemplation of Congress. See also *United States* v. *Kershner*, 228 F.2d 142 (1955); *United States* v. *Lehmann*, 136 F. Supp. 458 (1955); *Shomberg* v. *United States*, 348 U.S. 540 (1955).

The father of this applicant had acquired the status or condition of a United States citizen who had been physically present from September 1936 through July 3, 1946, in the Philippine Islands, which were then an outlying possession of the United States. His acquisition of this status or condition was completed and perfected under the Nationality Act of 1940, prior to the repeal of that statute by the Immigration and Nationality Act. Such status or condition existed intact on December 24, 1952, when the latter Act became effective and, as a consequence, was saved and continued unchanged by virtue of section 405(a), the savings clause of the Act. Accord-ingly, on January 11, 1958, when this applicant was born, the pre-served status or condition of the father, as described, was a proper

substantive element to be considered in determining whether his child, the applicant, then acquired United States citizenship under the provisions of section 301(a)(7) of the Immigration and Nationality Act. In other words, the father's physical presence in the Philippine Islands during a period when the Islands were uniformly regarded as an outlying possession of the United States, was saved as physical presence in an outlying possession of the United States for the purposes of section 301(a)(7) of the Immigration and Nationality Act, notwithstanding the provisions of section 101 (a)(29) of the same statute. This conclusion is a realistic one and, in principle, is believed to be entirely consistent with the position taken by the courts in their application of the savings clause. Fundamentally, it is also in conformity with the well-reasoned decision entered in *Matter of Y—*, 7—667, which has been referred to at an earlier point in this discussion.

Upon the premise of the authority cited and the reasoning set forth herein, it is concluded that the physical presence of the applicant's father in the Philippine Islands during the period September 1936—July 3, 1946, constituted physical presence in an outlying possession of the United States within contemplation of section 301(a) (7) of the Immigration and Nationality Act. It is further found that at the time of the applicant's birth in the Philippine Islands on January 11, 1958, his father was a United States citizen who had been previously physically present in the United States and an outlying possession of the United States for a period of ten years, at least five years of such period having been after he arrived at his fourteenth birthday, and that the applicant's mother at the time of the applicant's birth was an alien. Consequently, it is finally concluded that the applicant acquired citizenship of the United States at birth on January 11, 1958, under section 301(a)(7) of the Immigration and Nationality Act, and is entitled to the issuance of a certificate of citizenship.

ORDER: It is ordered that the application of S—K—V— for a certificate of citizenship be granted.