**Dalal ZAYED, Plaintiff,**

v.

**The UNITED STATES of America, et al., Defendants.**

**No. 1:02 CV 00241.**

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 6, 2002.

Christa D. Brunst, Office of the U.S. Attorney, Cleveland, OH, for Plaintiff.

Almeta A. Johnson, Euclid, OH, for Defendant.

## MEMORANDUM OPINION

NUGENT, District Judge.

This matter comes before the Court upon Defendant's Motion to Dismiss for lack of Subject Matter Jurisdiction (Doc. # 9). For the reasons that follow, Defendant's Motion to Dismiss is GRANTED.

### Factual and Procedural History

Plaintiff, Dalal Zayed, has filed two previous complaints in this Court, in 1996 and in 1999, requesting a review of her Application for Naturalization with the United States Department of Immigration and Naturalization Services (hereinafter "INS"), and both complaints were remanded by this Court to the INS for an investigation and a hearing. After each investigation and hearing, Plaintiff's Application for Naturalization was denied by the INS. Plaintiff filed the third and present Complaint against the Defendants, the United States of America, the INS, Mark Hansen, District Director of the INS, and John Ashcroft, Attorney General of the United States, on February 7, 2002 again seeking a judicial review of her denied Application for Naturalization.

Plaintiff, a Swedish citizen and native of Israel, and Nabeel Zayed, an Israeli citizen, were married in Israel on July 19, 1982 and together they had three children. Almost six years later, on May 12, 1988, the Israeli government, according to documents, granted the couple a revocable divorce, which the INS alleges was fraudulently obtained for the specific purpose of misleading the United States government in order to enter this country. On December 27, 1988, Plaintiff arrived in the United States and gave her parents' Illinois residence as her address to the INS. Two days later, Plaintiff's mother, a lawful permanent resident, filed a Petition for an Alien Relative to obtain an immigrant visa for Plaintiff, claiming that Plaintiff was single. The INS granted Plaintiff's visa petition as a second preference on the basis that the mother was a lawful permanent resident and Plaintiff, her daughter, was unmarried. On April 22, 1991, Plaintiff's second preference classification was approved, and she and the three children were admitted as lawful permanent residents.

On January 11, 1989, prior to Plaintiff's being granted the status of a lawful permanent resident, Nabeel Zayed, the alleged former husband, arrived in the United States, listing the residence of Plaintiff's sister in Lakewood, Ohio as his address. Shortly thereafter, on May 11, 1989, Plaintiff gave the Lakewood City School District a form indicating her sister's address in Lakewood, Ohio as her residence. From August 30, 1989 through November 22, 1990, the daughter of Plaintiff and Nabeel Zayed, Sandy, was enrolled in the Lakewood City Schools, and Nabeel Zayed continued that he resided at the Lakewood, Ohio address until late November, 1990. At some point prior to November 27, 1990, Plaintiff and Nabeel Zayed moved to Chicago Ridge, Illinois, because a document entitled Chicago Ridge School District 127½, indicated that Sandy Zayed was enrolled in that school district from November 27, 1990 to January 22, 1991. The same document stated that Plaintiff and Nabeel Zayed were married and resided at a Chicago Ridge, Illinois address. Apparently Plaintiff and Nabeel Zayed then moved from Chicago Ridge to Rocky River, Ohio because just one week later, on January 29, 1991, they indicated a Rocky River address on a Rocky River School District Registration Form for Sandy. On a document filed with the INS, Plaintiff confirmed she lived in Rocky River but stated that she began living there in June of 1991. Plaintiff and Nabeel Zayed remarried on May 26, 1992, according to Cuyahoga County and State of Ohio documents.

On or about February 2, 1996, Plaintiff filed an Application for Naturalization with the INS stating that she had resided with her parents at an Illinois address from December of 1988 through June of 1991. Plaintiff went on to state that at the end of June of 1991 she moved to the Rocky River, Ohio address. Sworn affidavits taken from Plaintiff's father and brother corroborate the statement made by the Plaintiff to the INS that she resided in Illinois with her parents. The affidavits, however, contradict her statement by indicating that she only stayed with her parents for a brief time, after which she moved into an apartment with Nabeel Zayed in Chicago Ridge. The affidavits did confirm, though, that Plaintiff and Nabeel Zayed eventually moved to the Cleveland area, where they have lived ever since.

Plaintiff filed a Complaint for Citizenship in this Court on September 3, 1996 in Case No. 1:96 CV 1905 seeking an adjudication of Naturalization under 8 U.S.C. § 1447(b), prior to a final determination being made by the INS. Due to the untimeliness of the Complaint, this Court entered judgment on January 14, 1998 remanding the case to the INS and mandating that a hearing be held to determine the outcome of Plaintiff's Application for Naturalization. After more than nineteen months without a hearing by the INS, Plaintiff filed a second Complaint for Citizenship on September 8, 1999 in this Court seeking an adjudication on the same Application for Naturalization in Case No: 1:99 CV 2126. Prior to this Court making a determination on that Complaint, the INS District Director in Cleveland issued Plaintiff a Notice of Intent to Deny on September 22, 1999, and accorded Plaintiff thirty days to refute the allegations contained in the Notice. Through counsel, Plaintiff submitted a timely response.

On November 15, 1999, the INS issued a final decision denying Plaintiff's Application for Naturalization. Plaintiff subsequently filed another administrative appeal on November 29, 1999. On Defendant's motion, this Court dismissed Plaintiff's appeal in Case No. 1:99 CV 2126 on December 20, 1999, due to Plaintiff's failure to fully exhaust her administrative remedies. After a hearing on Plaintiff's case was conducted by the INS on December 12, 2000, the INS affirmed the denial of Plaintiff's Application for Naturalization on October 12, 2001. Plaintiff then filed this third Complaint on February 7, 2002, seeking District Court review of her Application for Naturalization.

On March 27, 2001, prior to a final agency decision on Plaintiff's Application for Naturalization, the INS initiated deportation proceedings against Plaintiff by serving Plaintiff with a Notice to Appear for removal proceedings based on allegations of fraud and misrepresentation. In short, the INS charged that Plaintiff obtained a sham divorce in order to immigrate to the United States as the unmarried daughter of a lawful permanent resident alien. In doing so, the INS contends that Plaintiff obtained an immigrant visa by fraud or by willfully misrepresenting a material fact. The Defendant asserts that this Court does not have subject matter jurisdiction over this action involving Plaintiff's naturalization appeal because Plaintiff is also in removal proceedings. Accordingly, the Defendant has moved to Dismiss this case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)[1].

---

1. Pursuant to Local Rules 7.1(e), a party opposing a motion "shall serve and file a memorandum in opposition within ten (10) days after service of the motion, excluding intermediate Saturdays, Sundays, and legal holidays." Local Rules 7.1(e). Plaintiff's brief in opposition was therefore due on April 29, 2002. A case management conference was

## Motion to Dismiss Standard

Where subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the party asserting jurisdiction has the burden of proving jurisdiction in order to survive the motion to dismiss. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990). Where the defendant asks the court to dismiss the plaintiff's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court need only determine whether it has jurisdiction over the plaintiff's claims. The Sixth Circuit has adopted two standards of dismissal under Rule 12(b)(1), depending upon whether the movant makes a facial or factual attack on the plaintiff's complaint. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). A facial attack merely questions the sufficiency of the pleadings. In reviewing a facial attack, the court shall apply the same standard applicable to Rule 12(b)(6) motions. That is the Court will consider the material allegations of fact set forth in the complaint as being true and construe them in a light most favorable to the non-moving party. See, *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994); *Cooley v. United States*, 791 F.Supp. 1294 (E.D.Tenn.1992); *Ohio Nat. Life Ins. Co.*, 922 F.2d. at 325. On the other hand, where a district court reviews a plaintiff's complaint under a factual attack, the court does not presume that the plaintiff's allegations are true. In such cases, the court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *See id.; see also Tennessee Protection & Advocacy, Inc. v. Board of Educ.*, 24 F.Supp.2d 808, 812–13 (M.D.Tenn.1998). Defendant's motion involves both a legal and a factual attack on the sufficiency of Plaintiff's pleadings.

## Discussion

The question here is whether a district court has the authority to review an alien's Application for Naturalization that has been denied by the U.S. Department of Immigration and Naturalization Services while removal proceedings are pending against that alien.

Prior to 1990, under both the Internal Security Act of 1950 and the Immigration and Nationality Act of 1952, the sole authority to naturalize an alien rested with the United States District Court. The courts, however, were restricted from reviewing a denied Application for Naturalization while removal proceedings were pending. The basis for this separation of proceedings was to prevent a "race to the courthouse" by the alien between deportation proceedings and naturalization hearings. Aliens often attempted to race against the Attorney General seeking to gain citizenship through the U.S. District Court before the Attorney General was successful in obtaining a final determination of deportablility.

Congress, in an attempt to regulate these two competing efforts, enacted Section 318 of the National Security Act of 1952, which stated that "no petition for naturalization shall be finally heard by a

---

held on May 15, 2002 at which time the Court, sua sponte, granted the Plaintiff an extension of time, until May 24, 2002, to file the brief in opposition. Plaintiff's counsel, at that time, neither requested an extension of time nor showed any cause as to why he was entitled to an enlargement of time. Fed. R.Civ.P. 6(b). Plaintiff eventually filed the brief in opposition on May 24, 2002.

This Court is within its discretion to consider the Defendant's motion to dismiss as unopposed due to Plaintiff's lack of timely response, and in similar cases these motions are often granted. However, in the interest of justice this Court will not dismiss this case on procedural grounds, but rather will consider its merits.

naturalization court if there is pending against petitioner a deportation proceeding...." 8 U.S.C. § 1429. The Supreme Court of the United States held that Section 318 "suspend[ed] final hearings on naturalization where deportation proceedings were instituted *under this or any other Act.*" *Shomberg v. United States,* 348 U.S. 540, 544, 75 S.Ct. 509, 99 L.Ed. 624 (1955). The United States Court of Appeals for the Third Circuit similarly held that Section 318 "compels the determination that a naturalization court has no jurisdiction over the deportation proceeding which, if not finally determined, would necessarily be pending." *In re Petition of Terzich,* 256 F.2d 197, 200 (1958). The plain language of the statute and the coinciding case law clearly demonstrate the Congressional intent to restrict the ability of the District Courts to review an Application for Naturalization while removal proceedings are pending, so as to avoid "a race to the courthouse."

In 1990, Congress passed the Immigration and Naturalization Act which removed the authority of the United States District Courts to naturalize aliens, and placed the "sole" power to naturalize with the Attorney General. 8 U.S.C. § 1421(c). Prior to 1990, section 318, 8 U.S.C § 1429, read:

> no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this or any other Act; and no application for naturalization shall be considered by the **naturalization court** if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provi-

sions of this or any other Act. 8 U.S.C. § 1429 (emphasis added).

After Congress passed the Immigration and Naturalization Act of 1990, Section 318, U.S.C. § 1429 was amended to reflect that change, replacing "naturalization court" with "Attorney General court." The language was amended to signal the shift from judicial to administrative naturalization proceedings, but the original intent of Congress regarding Section 318 remained: to emphasize deportation proceedings over the naturalization process, and to avoid a race between an alien seeking to be naturalized and immigration authorities seeking to complete removal proceedings. Thus, based upon the relevant case law and the legislative history of Section 318, the Court will not exercise jurisdiction over an alien's action regarding naturalization while a removal proceeding against that alien is pending.[2]

### Conclusion

In accordance with the foregoing, Defendants' Motion to Dismiss is hereby GRANTED, and this action is dismissed without prejudice.

IT IS SO ORDERED.

---

**2.** The fact that Plaintiff initiated her naturalization proceedings years before the INS began removal proceedings does not invalidate the legislative choice to complete removal proceedings before naturalization proceedings. Although Plaintiff may not have "raced to the courthouse", the necessity of completing removal proceedings before finalizing naturalization proceedings is evident.