*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0149P (6th Cir.)
File Name: 04a0149p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

DALAL ZAYED,
    *Petitioner-Appellant,*

    *v.*

UNITED STATES OF AMERICA,
et al.,
    *Respondents-Appellees.*

No. 02-4011

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00241—Donald C. Nugent, District Judge.

Argued: February 6, 2004

Decided and Filed: May 24, 2004

Before: NELSON, GILMAN, and ROGERS, Circuit
Judges.

———————

## COUNSEL

**ARGUED:** Keevin J. Berman, Cleveland, Ohio, Abraham
Kay, LAW OFFICE OF ABRAHAM KAY, Cleveland, Ohio,
for Appellant. Patricia M. Corrales-Talleda, UNITED
STATES DEPARTMENT OF JUSTICE, Los Angeles,

California, for Appellee. **ON BRIEF:** Abraham Kay, LAW
OFFICE OF ABRAHAM KAY, Cleveland, Ohio, for
Appellant. Patricia M. Corrales-Talleda, UNITED STATES
DEPARTMENT OF JUSTICE, Los Angeles, California,
Michelle R. Slack, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., Kathleen L. Midian,
ASSISTANT UNITED STATES ATTORNEY, Cleveland,
Ohio, for Appellee.

———————

## OPINION

———————

DAVID A. NELSON, Circuit Judge. The U.S. Attorney
General, whose duties include the processing of applications
for naturalization, is prohibited by statute from considering
the naturalization application of any person against whom
there is pending a proceeding for removal from this country.
See 8 U.S.C. § 1429, the relevant portion of which is set forth
in the margin.[1]

The question presented in the case at bar is whether § 1429
likewise prohibits a United States district court from
exercising jurisdiction to review an administrative denial of
a naturalization application once a removal proceeding has
been instituted against the applicant. The court below
answered this question with an unqualified "yes" – an answer
that led the court to dismiss, without prejudice, a petition for
review of the denial of the petitioner's naturalization
application. Our answer — a heavily qualified "no" — is
different in form, but it leads us to the same result on the facts
presented here. Although § 1429 does not directly strip

---

[1] Subject to a proviso that has no bearing on this case, 8 U.S.C.
§ 1429 provides, in pertinent part, that "no application for naturalization
shall be considered by the Attorney General if there is pending against the
applicant a removal proceeding pursuant to a warrant of arrest issued
under the provisions of this chapter or any other Act . . . ."

district courts of jurisdiction to review the denial of applications for naturalization while removal proceedings are pending, the statutory scheme does, in our view, limit the scope of judicial review and the availability of meaningful relief. In the case at bar, we believe, the district court lacked the power to grant an effective remedy. We shall affirm the dismissal on that basis.

## I

The petitioner, Dalal Zayed, is a native of Israel and a citizen of Sweden. She entered the United States as a visitor for pleasure in December of 1988. Her mother, who had recently become a lawful permanent resident of this country, then applied for a relative's immigrant visa on Ms. Zayed's behalf. Ms. Zayed was admitted for permanent residence in April of 1991 as an unmarried daughter of a lawful permanent resident.[2]

Ms. Zayed applied for naturalization in February of 1996. She stated in her application that she had lived at her parents' Chicago-area address from December of 1988 until June of 1991 and that she had lived in the Cleveland area ever since. She also stated that she had married Nabeel Zayed in 1982, divorced him in 1988, and remarried him in 1992. She confirmed this information in an interview with an examiner for the Immigration and Naturalization Service. (A component of the Department of Justice, the INS took its marching orders from the Attorney General.[3])

---

[2] At the time in question, 8 U.S.C. § 1152(e)(2) provided that additional visas could be made available to spouses, unmarried sons, and unmarried daughters of lawful permanent residents after the fiscal year's quota of visas for citizens of the applicant's country had been reached.

[3] The Homeland Security Act of 2002 abolished the INS and transferred its functions to the Department of Homeland Security. See Pub.L.No. 107-296, 116 Stat. 2135 (2002).

In September of 1999 the INS notified Ms. Zayed that it intended to deny her application for naturalization. An investigation had revealed that the applicant lived with her once-and-future husband for at least two years during the time she claimed to have been living with her parents. Because Ms. Zayed appeared to have lied about her past addresses – presumably to avoid casting doubt on the *bona fides* of her divorce – the INS reached the preliminary conclusion that Ms. Zayed lacked the good moral character required for naturalization. It also determined that she might be removable for using a sham divorce to obtain lawful permanent residence here as an unmarried daughter.

Ms. Zayed filed a response to the notice of intent, but her response did not carry the day; the application for naturalization was denied. Ms. Zayed filed an administrative appeal, and a hearing followed. The INS affirmed its denial of the naturalization application in October of 2001.

Seeking relief in the district court, Ms. Zayed filed her petition for review in February of 2002. A few weeks later the INS initiated removal proceedings against Ms. Zayed. The agency then moved to dismiss Ms. Zayed's petition for lack of subject matter jurisdiction. The motion was based on the theory that because 8 U.S.C. § 1429 precludes the Attorney General from considering a naturalization application while removal proceedings are pending, the institution of such proceedings divested the district court of jurisdiction to review the denial of the naturalization application.

The district court granted the motion. After reviewing the legislative history of § 1429, the court concluded that the original intent of Congress in enacting the relevant portion of the statute had survived a set of amendments adopted in the Immigration Act of 1990, Pub. L. No. 101-649, § 401. Because the authority to naturalize aliens had been removed from the district courts, under the 1990 amendments, and had been vested solely in the Attorney General (see 8 U.S.C.

§ 1421(a), as amended), a conforming amendment was adopted to prohibit "the Attorney General," rather than the "naturalization court," from considering naturalization applications where removal proceedings were pending. The district court concluded that the substitution of "the Attorney General" for the "naturalization court" did not reflect any change in the underlying intent of Congress. That intent, the district court said in its memorandum opinion, remained what it had been for many years: "to emphasize deportation proceedings over the naturalization process, and to avoid a race between an alien seeking to be naturalized and immigration authorities seeking to complete removal proceedings."

Adopting the approach to statutory interpretation urged upon it by the government — an approach pioneered by the Supreme Court in *Church of the Holy Trinity v. United States*, 143 U.S. 457 (1892) — the district court elected to follow what it saw as the true intent of Congress without necessarily adhering to the letter of the statutory language. The petition for review was dismissed without prejudice, as we have said, and Ms. Zayed has filed a timely appeal.

## II

### A

We have jurisdiction of Ms. Zayed's appeal under 28 U.S.C. § 1291, the appeal having been taken from a final decision of the district court. Although the petition was dismissed without prejudice, the dismissal clearly terminated the action; Ms. Zayed could not cure the defect by amendment. Where an action, and not merely an amendable complaint (or petition), is dismissed without prejudice, the order of dismissal is final and appealable. See *Thompson v. Michigan Dep't of Corrections*, 23 Fed. Appx. 486, 487-88 (6th Cir. 2001); *CompuServe Inc. v. Saperstein*, No. 97-4038, 1999 WL 16481, at **2-3 (6th Cir. Jan. 8, 1999).

### B

Under 8 U.S.C. § 1421(c), federal district courts are given jurisdiction to review administrative denials of naturalization applications. "Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c). Ms. Zayed contends that the commencement of removal proceedings cannot divest a district court of the jurisdiction granted by § 1421(c). The INS responds that such divestiture is automatic under 8 U.S.C. § 1429.

It is difficult to square the agency's response with the plain language of § 1429. By its terms, the statute limits the authority of "the Attorney General" – not the authority of the district courts – to act on applications for naturalization: "no application for naturalization shall be considered by *the Attorney General* if there is pending against the applicant a removal proceeding . . . ." (Emphasis supplied.)

Although courts — particularly inferior courts such as ours — are generally well advised to be cautious about letting the actual language of a statute be trumped by an unarticulated congressional intent, we have some sympathy for the district court's conclusion as to what Congress intended when it changed the law in 1990. The history of the Immigration Act of that year does suggest that Congress intended removal proceedings to have priority over naturalization proceedings.

It is important to recall that while authority to naturalize aliens was vested in the district courts until 1990, removal of aliens was the province of the Attorney General. And until 1952, when § 1429 was adopted, the usual practice had been "for both the [removal] and naturalization processes to proceed along together until either [the] petitioner's [removal] or naturalization *ipso facto* terminated the possibility of the other occurring." *Shomberg v. United States*, 348 U.S. 540,

543 (1955).[4]  Section 1429 was designed to end this "race between the alien to gain citizenship and the Attorney General to deport him." *Id.* at 544.  That objective was accomplished by according priority to removal proceedings.

Thus § 1429 provided that "no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a [removal] proceeding . . . ." And when the "sole authority" to naturalize aliens was transferred from the district courts to the Attorney General in 1990, see 8 U.S.C. § 1421(a), a corresponding change was made in § 1429: "the Attorney General" replaced the "naturalization court" as the entity precluded from acting on naturalization applications during the pendency of removal proceedings.  Section 1421(c) — which, as we have seen, provides for judicial review of denials of naturalization applications — was also added at this time.  We are aware of no suggestion that Congress intended the priority of removal proceedings over naturalization proceedings to be altered by the 1990 amendments.

But we do not read the amended § 1429 as divesting the district courts of the jurisdiction granted under § 1421(c).  In this we agree with *Grewal v. Ashcroft*, 301 F. Supp. 2d 692, 696 (N.D. Ohio 2004), where the court declared that "Section [1429] simply has no bearing on the district court's *jurisdiction* to review the administrative denial of a naturalization application of an alien against whom removal proceedings have been initiated." (Emphasis supplied.)  The effect of § 1429, in our view, is to limit the scope of the court's review and circumscribe the availability of effective remedies, but not to oust the district court of a jurisdiction

---

[4]A person who has been naturalized cannot be removed, and a person who has been removed cannot be naturalized.  See *Apokarina v. Ashcroft*, 232 F. Supp. 2d 414, 415 n.5 (E.D. Pa. 2002), remanded, No. 02-4265, 2004 WL 742286 (3d Cir. Apr. 7, 2004).

expressly conferred on it by the very act of Congress that amended § 1429.

A district court that is exercising its § 1421(c) jurisdiction can review only those decisions that § 1429 permits the Attorney General to make, of course.  See *Apokarina v. Ashcroft*, 232 F. Supp. 2d 414, 416 (E.D. Pa. 2002) ("[T]he district court's scope of review of the denial of a naturalization petition, pursuant to section 1421(c), cannot be any greater than the authority of the Attorney General to consider the petition in the first place"), *remanded*, No. 02-4265, 2004 WL 742286 (3d Cir. Apr. 7, 2004).  Where the INS has denied an application for naturalization on the ground that removal proceedings are pending, therefore, the district court's de novo review is limited to review of that threshold determination. *Id.*

Of greater importance to this appeal, Ms. Zayed's application for naturalization having been denied on grounds other than the pendency of removal proceedings, the restraints that § 1429 imposes upon the Attorney General prevent a district court from granting effective relief under § 1421(c) so long as removal proceedings are pending.  The exclusive power to naturalize aliens rests with the Attorney General, as we have seen, and § 1429 bars the use of that power while removal proceedings are pending.  In the case before us, then, the district court could not properly have ordered the Attorney General to grant Ms. Zayed's application for naturalization.[5] And the district court could not properly have entered an order granting the application without reference to the

---

[5]We recognize that at least one district court has ordered the INS to grant an application for naturalization despite the pendency of removal proceedings against the applicant.  See *Ngwana v. Attorney General*, 40 F. Supp. 2d 319, 322 (D. Md. 1999).  We are at something of a loss, however, to understand how judicial fiat can overcome the statutory bar of § 1429.  See U.S. Const., art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . .").

Attorney General, Congress having decided that it would be the Attorney General who should have "sole authority to naturalize persons . . . ."  See 8 U.S.C. § 1421(a).

An alternative form of relief is suggested by *Gatcliffe v. Reno*, 23 F. Supp. 2d 581, 583, 585 (D.V.I. 1998), where the district court declared an applicant to be eligible for naturalization "but for the pendency of [removal] proceedings."  In the case at bar, however, Ms. Zayed did not request declaratory relief — and a declaration that she would be eligible for naturalization but for the pendency of removal proceedings might well have been a vain act in any event.

In the *Gatcliffe* case the court reasoned that its finding would allow the applicant to move for termination of the removal proceedings.  See *Gatcliffe*, 23 F. Supp. 2d at 583. The court apparently had in mind a regulation giving immigration judges the power to terminate removal proceedings "when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors."   See 8 C.F.R. § 1239.2(f).  Under a 1975 decision of the Board of Immigration Appeals, prima facie eligibility can be established by "a declaration of a court." *In re Cruz*, 15 I. & N. Dec. 236, 237 (BIA 1975), cited in *Gatcliffe*, 23 F. Supp. 2d at 583.[6]

Unfortunately for Ms. Zayed, the procedure contemplated by the court in *Gatcliffe* is not available to her.   An immigration judge's authority to terminate removal proceedings exists for a particular purpose: "to permit the alien to proceed to a final hearing on a pending application or petition for naturalization." 8 C.F.R. § 1239.2(f).  Ms. Zayed has already had a final hearing on her application for

---

[6]Whether *Cruz* remains good law notwithstanding the 1990 transfer of the naturalization power from the district courts to the Attorney General is an open question.  See *Apokarina v. Ashcroft*, No. 02-4265, 2004 WL 742286, at *3 (3d Cir. Apr. 7, 2004).

naturalization.  The § 1239.2(f) procedure is thus inapplicable here.

In these circumstances, we believe that the dismissal of Ms. Zayed's petition for review must be affirmed.  The fact that the statute precludes the relief sought requires this result.  Our affirmance, however, does not mean that the court will never be able to grant effective relief.  The petition having been dismissed without prejudice, Ms. Zayed will have an opportunity to file a new petition if she prevails in the removal proceedings.

There is one additional issue.  Ms. Zayed argues that the district court materially erred in finding that the INS initiated removal proceedings against her *before* it finally denied her application for naturalization.   The finding was indeed incorrect, but we agree with the INS that the error is immaterial.  Regardless of when removal proceedings are initiated, the Attorney General may not naturalize an alien while such proceedings remain pending.  See 8 U.S.C. § 1429.

The dismissal of the petition for review is therefore **AFFIRMED**.