07-1186-ag
Ali v. Mukasey

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: April 7, 2008)                                    Decided: April 22, 2008)

Docket No. 07-1186-ag

GARY RASHEED ALI, GAIL ALI,
SADE ALANA ALI, SHENISE SAMANTHA ALI,

*Petitioners*,

v.

MICHAEL B. MUKASEY, Attorney General
of the United States,[1]

*Respondent.*

Before: WALKER, CABRANES, AND RAGGI, *Circuit Judges*.

An immigration judge ("IJ") denied petitioners' application for termination of their removal

proceedings, and the Board of Immigration Appeals ("BIA") dismissed the appeal.  We hold that,

where a removable alien does not challenge on legal or constitutional grounds the decision to place

him in removal proceedings, we lack jurisdiction to consider his petition for relief.  The petition for

review is dismissed insofar as petitioners challenge the Department of Homeland Security's decision

to place them in removal proceedings and denied as to petitioners' other claims.

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as the respondent in this case.

1

GARY RASHEED ALI, *pro se*, Brooklyn, NY, *for Petitioners.*

REBECCA A. NIBURG, Trial Attorney, Office of Immigration Litigation (Peter D. Keisler, Assistant Attorney General, *on the brief*; Richard M. Evans, Assistant Director, Office of Immigration Litigation*, of counsel*), Civil Division, U.S. Department of Justice, Washington, DC, *for Respondent.*

JOSÉ A. CABRANES, *Circuit Judge*:

Petitioners Gary Rasheed Ali, Gail Ali, Sade Alana Ali, and Shenise Samantha Ali seek review of an August 10, 2005 decision of Immigration Judge ("IJ") William F. Jankun denying their application to terminate removal proceedings. *See In re Ali,* Nos. A 98-769-619, A 98-769-620, A 98-769-621, A 98-769-622 (Immig. Ct. N.Y. City Aug. 10, 2005). The Board of Immigration Appeals ("BIA") affirmed the IJ's decision in an opinion issued on February 23, 2007. *See In re Ali*, Nos. A 98-769-619, A 98-769-620, A 98-769-621, A 98-769-622 (BIA Feb. 23, 2007). Petitioners allege that the Department of Homeland Security ("DHS") improperly denied them the opportunity to withdraw their asylum applications and wrongly decided to initiate removal proceedings against them. On appeal, they contend that, in light of this conduct by DHS, the BIA should have terminated the removal proceedings and "remanded the case to the . . . Asylum Office[2] to provide that office with an opportunity to exercise discretion concerning [their] case." Petitioners' Br. 7. We find these arguments to be without merit but write to clarify that, where a removable alien does not challenge on legal or constitutional grounds the decision to place him in removal, we lack jurisdiction to consider his petition for review.

---

[2] We understand petitioners to be referring to the DHS Asylum Office with jurisdiction over their case.

2

## I. BACKGROUND

Petitioners are natives and citizens of Trinidad and Tobago. Gail Ali and her minor children Shenise and Sade entered the United States on or about December 1995 on B-2 non-immigrant visas that were valid until June 16, 1996. Gary Ali, the husband of Gail and father of Shenise and Sade was admitted to the United States in February 1996 on a B-2 visa that was valid until August 9, 1996. All four petitioners remained in the United States beyond the expiration of their visas. On March 10, 2005, a DHS asylum officer initiated removal proceedings against petitioners on the basis that they were present in the United States without authorization.

At a hearing before the IJ on May 25, 2005, petitioners conceded that they had overstayed their visas but declined to concede removability, contending that they were "victims of immigration fraud." Certified Admin. R. 72. Specifically, they claimed that they came to the attention of DHS when an organization they enlisted to help them legalize their status filed, without their knowledge, applications for political asylum on their behalf. The IJ determined that petitioners were removable but granted an adjournment so that their counsel could explore whether their circumstances rendered them eligible for any relief other than voluntary departure. At their next hearing, held on July 6, 2005, petitioners conceded their removability and requested termination of their removal proceedings or, in the alternative, voluntary departure. DHS informed the IJ that petitioners had filed a "motion for prosecutorial discretion" that morning. *Id.* at 79. The IJ then adjourned proceedings so that DHS could consider petitioners' application for relief.

At a hearing held on August 10, 2005, DHS notified the IJ that it had declined to grant petitioners' request for "termination or administrative closure" of the proceedings against them. *Id.* at 84. The IJ then issued an oral decision finding that (1) petitioners were not legally in the United States and (2) in light of the fact that petitioners lacked legal status, DHS "did not abuse [its] discretion" by placing them in removal proceedings. *Id.* at 59-60. The IJ further concluded that (3)

3

because DHS had declined "to terminate . . . or administratively close these proceedings based on the [manner] in which [petitioners] came to [its] attention," petitioners were ineligible for any relief other than voluntary departure. *Id.* Accordingly, the IJ denied petitioners' application for termination of their removal proceedings and granted their application for voluntary departure.

On appeal to the BIA, petitioners contended that the IJ "clearly erred" in ruling that the decision to commence removal proceedings against them represented a "proper exercise[]" of DHS's discretion. *Id.* at 8. They alleged that DHS should have allowed them to withdraw their asylum applications when it became clear that they had not intended to apply for asylum, and that its failure to do so amounted to a "failure to comply with its own regulations." *Id.* They also alleged that this failure caused them prejudice by depriving them of the opportunity to benefit from the exercise of prosecutorial discretion. On that basis, they proposed that the IJ should have permitted them to withdraw their asylum applications, terminated the proceedings against them, and remanded their case "to the [relevant DHS] Asylum Office to provide that office with an opportunity to exercise discretion concerning [their] case." *Id.* at 20-21.

The BIA dismissed petitioners' appeal, explaining:

> The determination to place an alien in proceedings is a matter of prosecutorial discretion entirely within the authority of the [DHS]. . . . A decision by the DHS to institute removal or other proceedings, or to cancel a Notice to Appear or other charging document before jurisdiction vests with the Immigration Judge, involves the exercise of prosecutorial discretion and is not a decision that the Immigration Judge or this Board may review.

> Nor does the Immigration Judge or this Board have jurisdiction to determine whether the DHS has violated its own regulations or internal policies. Given that the respondents were removable as charged, we find no error in the Immigration Judge's denial of the motion to terminate.

*In re Ali*, (BIA Feb. 23, 2007) (internal citations omitted).

## II. DISCUSSION

In their submissions to this Court, petitioners renew the claims they made before the BIA.

4

Because the BIA's opinion neither "adopts . . . [nor] merely supplements" the decision of the IJ, we take the opinion issued by the BIA as "the basis for [our] judicial review." *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005) (internal quotation marks and citation omitted).

**(1)**

We turn first to petitioners' claim that the BIA should have terminated their removal proceedings in light of DHS's failure to adhere to its own regulations. As an initial matter, we note that neither the BIA nor the IJ drew any conclusions regarding the veracity of petitioners' allegations that the DHS refused to allow them to withdraw their asylum applications. Nevertheless, we conclude that a remand for further fact-finding is unnecessary because—even assuming the truth of these allegations—petitioners have not demonstrated that this conduct caused them any prejudice. As we explained in *Waldron v. INS*, 17 F.3d 511 (2d Cir. 1993):

> [W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and the INS fails to adhere to it, the challenged deportation proceeding is invalid and a remand to the agency is required. . . . On the other hand, where an INS regulation does not affect fundamental rights derived from the Constitution or a federal statute, we believe it is best to invalidate a challenged proceeding only upon a showing of prejudice to the rights sought to be protected by the subject regulation.

*Id.* at 518.

According to petitioners, DHS's alleged failure to allow them to withdraw their asylum applications violated 8 C.F.R. § 103.2(b)(6).[3] This regulation, like the regulation we examined in *Waldron*, "primarily addresses the procedure," for an alien's withdrawal of an immigration-related petition or application. 17 F.3d at 518. Nothing in the regulation's contents suggests that its provisions are "grounded in any underlying fundamental constitutional or statutory right." *Id.* For

---

[3] This provision, which pertains to withdrawal of applications and petitions, states: "An applicant or petitioner may withdraw an application or petition at any time until a decision is issued by USCIS or, in the case of an approved petition, until the person is admitted or granted adjustment or change of status, based on the petition. However, a withdrawal may not be retracted." 8 C.F.R. § 103.2(b)(6).

5

this reason, any violation of section 103.2(b)(6) by the DHS would not constitute a basis for invalidating petitioners' removal proceedings unless petitioners can establish that the violation prejudiced "rights . . . protected by the subject regulation." *Id.*

Petitioners observe that the rejection of an asylum application triggers a mandatory referral to an IJ, *see* 8 C.F.R. § 208.14(c)(1),[4] while the withdrawal of an asylum application allows for a discretionary referral, *see* Affirmative Asylum Procedures Manual, Office of International Affairs, Asylum Division § Y2 (Feb. 2003) (noting that, when an application is withdrawn, "the asylum office determines whether to initiate removal proceedings"). On that basis, they contend that DHS's failure to allow them to withdraw their asylum applications prejudiced them by depriving them of the opportunity to benefit from the favorable exercise of prosecutorial discretion.

This claim lacks merit for at least two reasons. First, petitioners have offered no evidence tending to establish that, given the opportunity, the asylum officer who placed them in removal proceedings would have acted otherwise. Second, as the record reveals, petitioners actually were given the chance to seek a favorable exercise of prosecutorial discretion from DHS, via the "motion for prosecutorial discretion" they filed while in removal proceedings. Accordingly, because we conclude that petitioners have failed to demonstrate that they were prejudiced by DHS's alleged failure to comply with its own regulations, we deny this aspect of their petition for review without reaching the question of whether DHS did, in fact, engage in the conduct about which petitioners complain.

**(2)**

We turn next to petitioners' claim that DHS should have declined to place them in removal

---

[4] This provision states, in relevant part, that "[i]f the asylum officer does not grant asylum to an applicant after an interview," 8 C.F.R. § 208.14(c), "in the case of an applicant who appears to be inadmissible or deportable . . . the asylum officer *shall* refer the application to an immigration judge, together with the appropriate charging document, for adjudication in removal proceedings," *id.* § 208.14(c)(1) (emphasis added).

proceedings based on the manner in which they came to DHS's attention.

The Immigration and Nationality Act ("INA") provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision . . . by the Attorney General to commence proceedings . . . against any alien," 8 U.S.C. § 1252(g), unless the claim involves a "constitutional claim[] or question[] of law raised upon a petition for review filed . . . in accordance with [the INA's provisions for judicial review]," *id.* § 1252(a)(2)(D). The Homeland Security Act of 2002 transferred authority to commence removal proceedings from the Immigration and Naturalization Service to the Secretary of DHS.[5] The Homeland Security Act also contains a provision stating that, where functions have been transferred by the Act to DHS, statutory references to the authority that was formerly responsible for those functions will be deemed to refer to DHS. *See* 6 U.S.C. § 557 ("With respect to any function transferred by or under this chapter[,] . . . reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the Department to which such function is so transferred.").

Pursuant to 6 U.S.C. § 557, petitioners' challenge to DHS's decision to commence removal proceedings against them falls within the scope of the judicial review provisions of the INA. As described above, the INA prohibits us from hearing such a challenge unless it involves a "constitutional claim[] or question[] of law." 8 U.S.C. § 1252(g). In the instant case, petitioners do not allege that they were placed in removal proceedings unlawfully or for reasons that would offend the Constitution. Accordingly, we lack jurisdiction to review this aspect of the petition for review.

**(3)**

Finally, petitioners challenge the BIA's refusal to terminate their removal proceedings and

---

[5] Specifically, 6 U.S.C. § 202(3) transferred to the Secretary of DHS the responsibility for "[c]arrying out the immigration enforcement functions vested by statute in, or performed by, the Commissioner of Immigration and Naturalization (or any officer, employee, or component of the Immigration and Naturalization Service)."

remand their case to the relevant asylum office. Upon review of the record, we detect no error in the BIA's determination that petitioners were ineligible for any relief other than voluntary departure. We therefore deny this aspect of the petition for review.

### III. Conclusion

For the reasons given above, the petition for review is dismissed insofar as petitioners challenge the Department of Homeland Security's decision to place them in removal proceedings and denied as to petitioners' other claims.