07-1170-cv
Ajlani v. Chertoff

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: August 6, 2008                    Decided: October 7, 2008)

Docket No. 07-1170-cv

MAJED AJLANI,

*Plaintiff-Appellant*,

—v.—

MICHAEL CHERTOFF, Secretary of Homeland Security,
JONATHAN R. SCHARFEN, Acting Director of USCIS,
MICHAEL B. MUKASEY, Attorney General of the United States,
ROBERT S. MUELLER III, Director of Federal Bureau of Investigation,
ANDREA J. QUARANTILLO, District Director of the NY USCIS Office,[1]

*Defendants-Appellees*.

B e f o r e:

RAGGI, WESLEY, and LIVINGSTON,

*Circuit Judges.*

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales; Acting Director of United States Citizenship and Immigration Services ("USCIS") Jonathan R. Scharfen is automatically substituted for former Director of USCIS Emilio T. Gonzalez; and District Director of the New York USCIS Office Andrea J. Quarantillo is substituted for former District Director Mary Anne Gantner.

1

_____

Appeal from a judgment of the United States District Court for the Eastern District of New York (Brian M. Cogan, *Judge*) dismissing plaintiff's action pursuant to 8 U.S.C. § 1447(b) for declaratory and injunctive relief to effect his naturalization as a United States citizen and to prohibit his removal from this country. The district court correctly concluded that it lacked jurisdiction to review the propriety of pending removal proceedings and that the pendency of such proceedings precluded plaintiff from stating a present claim for naturalization relief.

AFFIRMED.

_____

> SCOTT BRATTON, Margaret Wong & Associates Co., LPA, Cleveland, Ohio, *for Plaintiff-Appellant*.
>
> SCOTT DUNN, Assistant United States Attorney (Varuni Nelson, Assistant United States Attorney, *of counsel*), *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, New York, *for Defendants-Appellees*.

_____

REENA RAGGI, *Circuit Judge*:

Plaintiff Majed Ajlani appeals from a judgment of dismissal entered on February 12, 2007, in the United States District Court for the Eastern District of New York (Brian M. Cogan, *Judge*). Pursuant to 8 U.S.C. § 1447(b), Ajlani, a Syrian national, sued for declaratory and injunctive relief to compel his naturalization as a United States citizen and

2

to prohibit his removal from this country. The district court concluded that it lacked jurisdiction to review the propriety of removal proceedings then pending against Ajlani and that the pendency of such proceedings precluded plaintiff from stating a present claim for naturalization relief. Our court has not previously considered whether a district court may afford an alien naturalization relief pursuant to 8 U.S.C. § 1447(b) when pending removal proceedings preclude the Attorney General from considering his naturalization application. See 8 U.S.C. § 1429.[2] We now answer that question in the negative and, accordingly, affirm the judgment of dismissal.

## I. Background

### A. Ajlani's Acquisition of Permanent Resident Status

Majed Ajlani entered the United States as a tourist on August 9, 1987. Overstaying his visa, Ajlani accumulated four convictions over the course of the next thirteen years: in New York, for (1) forgery in 1989, (2) making a false incident report in 1995, and (3) trespass in 2000; and in Kentucky, for (4) credit card fraud in 1989. Nevertheless, on July

---

[2] In 2002, Congress transferred authority (1) to commence removal proceedings and (2) to adjudicate applications for naturalization from the Attorney General to the Secretary of the Department of Homeland Security. See Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 402(3), 441(2), 451(b)(2), 116 Stat. 2135, 2178, 2192, 2196 (codified at 6 U.S.C. §§ 202(3), 251(2), 271(b)(2)). Because this opinion discusses relevant naturalization and removal law both before and after 2002, our references throughout this opinion to the authority of the "Attorney General" in the areas of naturalization and removal should be understood to extend to his statutory successor as well as to those immigration agencies to which these officials have delegated some of this authority.

3

16, 1996, Ajlani secured lawful permanent resident status based on his marriage to a United States citizen, a marriage that would subsequently end in divorce.

B.     Ajlani's Unsuccessful Efforts to Acquire United States Citizenship

In April 2004, Ajlani filed for United States citizenship, submitting to the requisite initial examination on August 9, 2005.[3]  See 8 C.F.R. § 335.2(a); see also 8 U.S.C. § 1446(b). On March 27, 2006, his application was granted.

Before Ajlani publicly took the oath of allegiance necessary to become a United States citizen, see id. § 1448, he departed this country and attempted to re-enter through Canada on September 22, 2006.  This event apparently prompted border officials to take a closer look at Ajlani's immigration status.  Based on his record of prior convictions, United States Citizenship and Immigration Services ("USCIS") served Ajlani with a written notice directing him to appear for removal proceedings in Manhattan on October 10, 2006.[4]  When Ajlani appeared before an immigration judge on October 10, 2006, to address possible

---

[3] In his initial petition to the district court, Ajlani stated that his examination took place on August 26, 2005.  In a subsequent affidavit and in his opposition to the motion to dismiss below, however, he reported that his examination took place on August 9, 2005.  For the purposes of our analysis this discrepancy is immaterial.  We adopt the August 9 date here.

[4] The September 22, 2006 notice referenced Ajlani's forgery and credit card fraud convictions and advised him that he was subject to removal (1) as an alien who had committed crimes involving moral turpitude and (2) as an immigrant who, at the time of application for admission to the United States, was not in possession of a valid entry document or document of identity and nationality.  See 8 U.S.C. § 1182(a)(2)(A)(i)(I), (a)(7)(A)(i)(I).

4

removal, the proceedings were terminated because the government had not filed "the appropriate documents with the Immigration Court to initiate [Ajlani's] hearing." Notice of Immigration Ct., Oct. 10, 2006; see 8 C.F.R. §§ 1003.14(a), 1239.1(a). That same day, in what the district court aptly described as an apparent "instance of one department failing to communicate with another," other immigration authorities sent Ajlani a notice to appear at a naturalization oath ceremony on October 18, 2006. Ajlani v. Chertoff, No. 06 Civ. 5872, order at 2 (E.D.N.Y. Feb. 8, 2007).

On October 17, 2006, the New York District Director of USCIS issued a "Motion to Reopen" Ajlani's naturalization proceedings pursuant to 8 C.F.R. § 335.5 (providing for reopening based on receipt of "derogatory information concerning an applicant whose application has already been granted . . . but who has not yet taken the oath of allegiance"). Thus, when Ajlani appeared at the next day's naturalization ceremony at the federal courthouse in Brooklyn, he was not allowed publicly to take the oath of citizenship. Instead, he was served with the Motion to Reopen, which stated, inter alia, that "the Service proposes to reconsider the decision to grant your Application for Naturalization" and that, "[o]nce the review on your case has been completed, your case will be rescheduled for the Naturalization Ceremony." Motion to Reopen, Oct. 17, 2006.

On December 20, 2006, the government formally commenced removal proceedings against Ajlani by filing a notice to appear with the immigration court. See 8 C.F.R.

§ 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."); id. § 1239.1(a) (providing that "[e]very removal proceeding conducted under section 240 of the [Immigration and Nationality Act of 1952 (INA), Pub. L. No. 82-414, § 240, 66 Stat. 163, 204 (codified as amended at 8 U.S.C. § 1229a)] to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the immigration court"). A few days later, on December 26, 2006, the immigration court issued a written notice to Ajlani directing him to appear for a master removal hearing on January 23, 2007. At oral argument the parties confirmed that, as a result of a series of adjournments largely attributable to agency docket backlogs, the question of Ajlani's removal remains pending.

C.     Proceedings in the District Court

On October 30, 2006, approximately two weeks after Ajlani was excluded from the naturalization oath ceremony and notified of the government's intent to reopen his naturalization application, he commenced this federal action. Ajlani's pro se complaint requested declaratory relief pronouncing defendants' actions in not admitting him to citizenship unlawful on various grounds. He further requested either (a) a writ of mandamus compelling the District Director of USCIS to administer the oath of citizenship, or (b) a judicial administration of that oath. On December 18, 2006, Ajlani also requested that the district court enjoin defendants from removing him from the United States.

6

Defendants filed an answer to the complaint on December 29, 2006, denying the allegations and asserting that "[p]etitioner is not entitled to naturalization so long as removal proceedings are pending against him." Answer at 2. On January 10, 2007, defendants responded to plaintiff's motion for injunctive relief, arguing (1) that no such relief was available because the court lacked jurisdiction to hear any cause or claim arising from the Attorney General's decision to commence removal proceedings, and (2) that the pending removal proceedings "serve[] as a basis for dismissing petitioner's petition in its entirety." Letter from Scott Dunn, Assistant U.S. Att'y, to Hon. Brian M. Cogan, U.S. Dist. Judge, at 2-3 (Jan. 10, 2007). In a footnote, the government argued that "even if the Court were to conclude that it had jurisdiction over petitioner's naturalization application and even if the Court then concluded that it had authority to grant that application despite 8 U.S.C. [§] 1429, the Court would still have to deny the application" on the merits. Id. at 3 n.2. The district court construed defendants' letter as a motion to dismiss and set a briefing schedule.

In opposing dismissal, Ajlani, still proceeding pro se, expanded the relief sued for in his original complaint to include a judicial declaration that the removal proceedings pending against him were "unconstitutional, discriminatory, without merit[,] and violat[ive of] due process." Ajlani Opp'n to Motion to Dismiss at 4.

On February 8, 2007, the district court granted defendants' motion for dismissal, ruling that (1) to the extent Ajlani challenged defendants' commencement of removal proceedings, the court lacked jurisdiction to review that decision; and (2) to the extent Ajlani

7

sought a judicial order compelling or granting his naturalization, he "failed to state a claim upon which relief may be granted" in light of the pending removal proceedings. Ajlani v. Chertoff, No. 06 Civ. 5872, order at 2-3.

Ajlani timely appealed the judgment of dismissal.

## II.     Discussion

### A.     Standard of Review

We review a judgment of dismissal de novo, whether the judgment is based on a lack of subject matter jurisdiction or the failure to state a claim on which relief can be granted. See Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007) (failure to state claim); Duamutef v. INS, 386 F.3d 172, 178 (2d Cir. 2004) (subject matter jurisdiction).

### B.     Ajlani's Challenge to Removal

Ajlani submits that, to the extent the dismissal of his complaint was based on the pendency of removal proceedings against him, the district court erred in several respects. First, the court should have declared that, even before removal proceedings commenced, Ajlani acquired United States citizenship by virtue of either his completion of the naturalization process on October 18, 2006, or his acquisition of United States nationality because of his demonstrated permanent allegiance to the United States. Second, the court failed to recognize that removal proceedings against Ajlani in fact closed on October 10, 2006 — before he filed his October 30, 2006 complaint in this case — when the government appeared in immigration court unprepared to file the documents necessary to pursue removal.

8

Third, the court erred in failing to consider Ajlani's claim that the pending removal proceedings against him violated his right to be free from discriminatory and selective enforcement.

### 1.    Ajlani Did Not Complete the Naturalization Process nor Does He Qualify as a United States National

Ajlani claims that he was effectively naturalized on October 18, 2006, because his application for naturalization had been granted; he attended the oath ceremony required by 8 U.S.C. § 1448; he recited the oath of allegiance, albeit "to himself"; and he signed a voter registration card on that same date identifying himself as a United States citizen. Ajlani Opp'n to Motion to Dismiss at 3. We are not convinced.

The grant of an application for naturalization is not determinative of citizenship. An alien who has not taken the oath in a public ceremony remains a non-citizen. See 8 U.S.C. § 1448 (providing that, "before being admitted to citizenship," an alien must "take in a public ceremony . . . an oath" of allegiance). The statute's implementing regulations similarly identify the taking of a public oath as a prerequisite for naturalization, see 8 C.F.R. § 337.1 ("[A]n applicant for naturalization shall, before being admitted to citizenship, take in a public ceremony . . . the following oath of allegiance . . . ."), and specifically provide that, when USCIS receives "derogatory information concerning an applicant whose application has already been granted . . . , but who has not yet taken the oath of allegiance . . . , the Service shall remove the applicant's name from any list of granted applications or of applicants scheduled for administration of the oath of allegiance." 8 C.F.R. § 335.5 (emphasis added).

9

Thus, Ajlani, who was excluded from the October 18, 2006 naturalization ceremony pursuant to 8 C.F.R. § 335.5, could not acquire United States citizenship simply by reciting the oath of allegiance to himself or by identifying himself as a United States citizen on a voter registration document. Like the district court, we conclude that there is no such thing as "self-naturalization."

Ajlani's alternative argument that he acquired United States nationality pursuant to 8 U.S.C. § 1101(a)(22)(B) based on demonstrated permanent allegiance to the United States necessarily fails because Ajlani does not fit into any of the discrete classes of persons "who are 'nationals, but not citizens, of the United States at birth.'" Marquez-Almanzar v. INS, 418 F.3d 210, 217 (2d Cir. 2005) (quoting 8 U.S.C. § 1408). As we explained in Marquez-Almanzar v. INS, "[8 U.S.C.] § 1101(a)(22)(B) itself does not provide a means by which an individual can become a U.S. national." Id. at 212.

> 2. Although No Removal Proceedings Were Pending Against Ajlani at the Time He Filed His Initial Complaint, the District Court Correctly Concluded that It Lacked Jurisdiction to Review His Subsequent Prayer for Relief from Removal

Ajlani is correct that no removal proceedings were pending against him at the time he filed his federal complaint. Removal proceedings against him did not commence until December 20, 2006, when the government filed a notice to appear with the immigration court. See 8 C.F.R. §§ 1003.14(a), 1239.1(a). That sequence of events does not, however, assist Ajlani in challenging the district court's judgment of dismissal.

10

In opposing defendants' motion to dismiss, Ajlani expanded the prayer for relief stated in his original complaint to request a declaration that the then-pending removal proceedings against him were unconstitutional and discriminatory. Consistent with its obligation to construe pro se filings liberally, the district court reasonably treated Ajlani's relief request as a proposed amendment to the original complaint. Accordingly, the district court properly considered whether such a claim could survive the motion to dismiss, and it correctly concluded that it could not for lack of jurisdiction.

The immigration code plainly states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [relevant provisions of the INA]." 8 U.S.C. § 1252(g). While the statute creates an exception for "constitutional claims or questions of law," see id. § 1252(a)(2)(D), jurisdiction to review such claims is vested exclusively in the courts of appeals and can be exercised only after the alien has exhausted administrative remedies, see id. § 1252(a)(2)(D), (a)(5), (b)(4), (d). Accordingly, the district court lacked jurisdiction to review Ajlani's constitutional challenges to his removal proceedings, and it would be premature for this court to do so now.

C.    Ajlani's Claim for Naturalization Relief

Ajlani asserts that the district court erred in holding that the pendency of removal proceedings precluded it from adjudicating his claim for naturalization relief under 8 U.S.C.

11

§ 1447(b). To explain why, on de novo review, we reach the same conclusion as the district court, it is necessary briefly to review the development of relevant provisions of the law applicable to naturalization and removal before discussing their application to this case. See Bellajaro v. Schiltgen, 378 F.3d 1042, 1045 (9th Cir. 2004) (observing that dispute regarding courts' authority to grant naturalization relief to aliens against whom removal proceedings are pending "exists in large part because of changes that were made to the naturalization process in 1952 and 1990").

           1.     Naturalization and Removal Law

Before 1990, naturalization authority and removal authority were vested in different branches of government, with naturalization being the province of the courts and removal the province of the executive acting through the Attorney General. See Saba-Bakare v. Chertoff, 507 F.3d 337, 341 (5th Cir. 2007); Bellajaro v. Schiltgen, 378 F.3d at 1045; Zayed v. United States, 368 F.3d 902, 905 (6th Cir. 2004); see also INA § 310(a), 66 Stat. at 239; Naturalization Act of 1906, Pub. L. No. 59-338, §§ 3, 11, 34 Stat. 596, 596, 599.[5] In the absence of law giving priority to one authority over the other, it was possible for naturalization and removal proceedings to advance simultaneously, sometimes giving rise

---

[5] The Attorney General nevertheless played a role in the court's exercise of primary naturalization authority because immigration authorities acting under his direction conducted the preliminary investigation and examination of applicants and made recommendations to the district court. See INA § 335, 66 Stat. at 255-56. Upon review, the district court could adopt the recommendation, modify it, or itself hold a hearing on the naturalization application. See id. §§ 335(d), 336, 66 Stat. at 256-58; Etape v. Chertoff, 497 F.3d 379, 385 (4th Cir. 2007) (discussing background to enactment of § 1447(b)).

to what the Supreme Court described as a race "between the alien to gain citizenship and the Attorney General to deport him."  Shomberg v. United States, 348 U.S. 540, 544 (1955); see also id. at 543-44 (recognizing that first process to conclude effectively precluded the other from occurring).

Section 27 of the Internal Security Act of 1950 put an end to such races, providing that

> No person shall be naturalized against whom there is outstanding a final finding of deportability, and no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act . . . .

Internal Security Act of 1950, Pub. L. No. 81-831, § 27, 64 Stat. 987, 1015, reenacted without significant change by INA § 318, 66 Stat. at 244 (codified as amended at 8 U.S.C. § 1429).  Thus, from 1950 to 1990, federal law clearly forbade district courts from ruling on naturalization applications while removal proceedings were pending against the alien applicant.

In the Immigration Act of 1990, Congress unified naturalization and removal authority in the executive by conferring "sole authority to naturalize persons as citizens of the United States" on the "Attorney General."  Immigration Act of 1990, Pub. L. No. 101-649, § 401(a), 104 Stat. 4978, 5038 (codified at 8 U.S.C. § 1421(a));  see Etape v. Chertoff, 497 F.3d at 386 (explaining Congress's intent to streamline naturalization process and to avoid backlog naturalization proceedings created on district courts' dockets); Kai Tung Chan v. Gantner,

13

464 F.3d 289, 290 (2d Cir. 2006) (same). In accordance with this change, Congress amended the INA's priority provision, 8 U.S.C. § 1429, "by striking 'finally heard by a naturalization court' and inserting 'considered by the Attorney General.'" Immigration Act of 1990 § 407(d)(3), 104 Stat. at 5041. As a result, the priority provision of the INA now reads (subject to various provisos not applicable in this case) as follows:

> [N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act . . . .

8 U.S.C. § 1429.

At the same time that the 1990 Act refocused the priority provision to limit the Attorney General's newly conferred naturalization authority, the law reserved a measure of naturalization jurisdiction for the courts in two circumstances: denial and delay. Thus, if the Attorney General denies a naturalization application, the alien can seek de novo review of the denial in the district court. See id. §§ 1421(c), 1447(a). Similarly, if "there is a failure to make a determination" on the application within 120 days after the applicant's required examination, the alien can ask the district court to "determine the matter or remand the matter, with appropriate instructions, to [immigration authorities] to determine the matter." Id. § 1447(b).

14

2.    <u>Ajlani Cannot Secure Judicial Naturalization Pursuant to § 1447(b)</u>
<u>While Removal Proceedings Are Pending Against Him</u>

a.    <u>Jurisdiction</u>

To invoke the district court's naturalization jurisdiction pursuant to 8 U.S.C. § 1447(b), an alien must demonstrate the Attorney General's "failure" to decide the plaintiff's naturalization application "before the end of the 120-day period" following the applicant's eligibility examination. Assuming that Ajlani satisfies this requirement,[6] the government's actions in this case raise two additional questions, left unanswered by the statute, that possibly affect jurisdiction under § 1447(b). <u>First</u>, does the reopening of a naturalization proceeding pursuant to 8 C.F.R. § 335.5 afford the Attorney General a new 120-day period of exclusive jurisdiction to determine naturalization, or does reopening only restart the 120-day clock at whatever time it stopped when the Attorney General initially

---

[6] To decide whether the 120-day time period had expired in this case, we would necessarily have to determine when it began. This, in turn, would require us to consider whether the term "examination" in 8 U.S.C. § 1446(b), as referenced by § 1447(b), means the initial USCIS interview date, <u>see, e.g.</u>, <u>Al-Farisi v. Mueller</u>, 492 F. Supp. 2d 335, 337 (S.D.N.Y. 2007), or the entire process by which USCIS gathers information on an applicant, <u>see, e.g.</u>, <u>id.</u> at 337 n.1; <u>Danilov v. Aguirre</u>, 441 F. Supp. 2d 441, 443-44 (E.D. Va. 2005). The lower courts in this Circuit have clearly coalesced around the former interpretation. <u>See, e.g.</u>, <u>Al-Farisi v. Mueller</u>, 492 F. Supp. 2d at 337; <u>Mostovoi v. Sec'y of the Dep't of Homeland Sec.</u>, No. 06 Civ. 6388, 2007 WL 1610209, at *3 (S.D.N.Y. June 4, 2007); <u>Alhamedi v. Gonzales</u>, No. 07 Civ. 2541, 2007 WL 1573935, at *3 (S.D.N.Y. May 30, 2007)). This court has yet to comment on the issue, however, and since we assume without deciding that § 1447(b) jurisdiction arises in this case, <u>see infra</u> text accompanying note **[7]**, we do not reach the question in the present appeal.

15

granted the naturalization application?  Second, do pending removal proceedings affect §

1447(b) jurisdiction?

Because defendants raise no challenge to the exercise of § 1447(b) jurisdiction in this

case, we need not answer these questions on this appeal.[7]  Rather, like the district court, we

assume the existence of § 1447(b) jurisdiction, mindful that the concerns we identify

implicate statutory rather than constitutional jurisdiction.  See Abimbola v. Ashcroft, 378

---

[7] We note that, as to the first question, if reopening only restarts the clock, no jurisdictional concern arises in this case because the 120-day period referenced in § 1447(b) had concluded some three months before the Attorney General granted Ajlani naturalization on March 27, 2006.  On the other hand, if reopening resets the clock for a new 120-day period — a conclusion not obvious from the statute's exclusive identification of the eligibility examination date as the starting point — it might be argued that Ajlani's October 30, 2006 complaint could not demonstrate a decisional failure of more than 120 days from the October 17, 2006 reopening of his naturalization proceeding.

As to the second question, while the pendency of removal proceedings at the time a complaint is filed might preclude the exercise of § 1447(b) jurisdiction, cf. Saba-Bakare v. Chertoff, 507 F.3d at 340 (leaving unanswered the question of § 1447(b) jurisdiction under such circumstances by ruling that § 1429 would render the exercise of § 1447(b) jurisdiction "futile" in any case), because removal proceedings against Ajlani did not commence until December 20, 2006, see supra at **[5, 10]**, some weeks after the filing of his October 30, 2006 complaint, it is not clear that the initiation of those proceedings would divest the court of jurisdiction.  Cf. Zayed v. United States, 368 F.3d at 906 (deciding, in case involving removal proceedings brought after petition for review under § 1421(c) was filed, that "effect of [removal proceedings under] § 1429 . . . is to limit the scope of the court's review and circumscribe the availability of effective remedies, but not to oust the district court of a jurisdiction expressly conferred on it by [§ 1421(c)]").

In identifying these issues, we do not predict how they might be resolved by this court in an appropriate case.  For reasons explained infra at **[19-24]**, on this appeal, we conclude that, even if § 1447(b) jurisdiction was properly invoked, once removal proceedings were initiated, the district court could not grant plaintiff naturalization relief while those proceedings remained pending.  See Saba-Bakare v. Chertoff, 507 F.3d at 340; Bellajaro v. Schiltgen, 378 F.3d at 1046-47 (holding that, even if pending removal proceedings against plaintiff did not deprive district court of jurisdiction to review naturalization application, court could not grant naturalization while proceedings pending); Zayed v. United States, 368 F.3d at 906 (same).

F.3d 173, 180 (2d Cir. 2004) (assuming hypothetical jurisdiction); <u>Fama v. Comm'r of Corr.</u> <u>Servs.</u>, 235 F.3d 804, 816 n.11 (2d Cir. 2000) (same).

We proceed to explain why we conclude that the district court, nevertheless, correctly determined that Ajlani did not state a claim for naturalization relief while removal proceedings were pending and, thus, properly dismissed the complaint.

       b.      <u>The District Court Could Not Direct Defendants to Admit Ajlani</u> <u>to Citizenship While Removal Proceedings Were Pending</u> <u>Against Him</u>

Focusing first on that part of Ajlani's prayer for relief that seeks to compel defendants to admit him to United States citizenship, we conclude that 8 U.S.C. § 1429 does not permit an alien to state a claim for such relief under § 1447(b) while removal proceedings are pending against him. The previously quoted text of § 1429 clearly prohibits the Attorney General from making a final determination on naturalization while a removal proceeding is pending against the applicant. Like our sister circuits that have addressed the issue, we conclude that an alien cannot claim a form of relief pursuant to § 1447(b) that is forbidden by § 1429.

As the Sixth Circuit explained in <u>Zayed v. United States</u>, although § 1429 does not deprive a district court of its appointed jurisdiction in naturalization matters, it does "limit the scope of the court's review" and "circumscribe the availability of effective remedies," 368 F.3d at 906. Once removal proceedings are commenced against an alien — and in <u>Zayed</u>, as in this case, removal proceedings were initiated after plaintiff filed for judicial relief, <u>see</u> <u>id.</u> at 904 — the district court cannot compel the Attorney General "to grant [the

17

alien's] application for naturalization," because "the statutory bar of § 1429" cannot be overcome by "judicial fiat." Id. at 906 & n.5.

The Fifth Circuit similarly construed the limiting effect of § 1429 on a judicial naturalization proceeding in Saba-Bakare v. Chertoff, 507 F.3d 337. Construing § 1447(b) to authorize a district court to grant relief for "the administrative delay of an application that the Attorney General may consider," the Fifth Circuit observed that § 1429 did not permit the Attorney General to consider the naturalization application of an alien against whom removal proceedings were pending. Id. at 340 (emphasis in original). In short, "the administrative delay" complained of by Saba-Bakare was "required by § 1429." Id. In these circumstances, the Fifth Circuit concluded that it was "futile" for an alien to sue for § 1447(b) relief when removal proceedings were pending against him because, even if the district court remanded the matter for immigration authorities to decide the alien's naturalization application, "§ 1429 requires that [the alien] wait until the termination of the removal proceeding" for that determination. Id.

We here adopt the reasoning of these two courts and conclude that, to the extent Ajlani sued for an order compelling defendants to admit him to citizenship, the district court could not grant such relief. Section 1447(b) authorizes a district court to "remand" a delayed naturalization application "with appropriate instructions, to the Service to determine the matter" (emphasis added). While removal proceedings were pending against Ajlani, the district court could not, consistent with § 1429, appropriately instruct defendants to admit Ajlani to citizenship in advance of the completion of those removal proceedings.

18

c.  The District Court Could Not Itself Admit Ajlani to Citizenship While Removal Proceedings Were Pending Against Him

By its terms, § 1429 limits only the authority of "the Attorney General" to act on applications for naturalization when removal proceedings are pending against an alien. The statute says nothing about the authority of district courts acting pursuant to § 1421(c) or § 1447(b). Thus, we consider whether the district court could itself have admitted Ajlani to citizenship while removal proceedings were pending against him. Three of our sister circuits have considered the question and concluded that the priority afforded removal proceedings by § 1429 limits the courts' authority to grant naturalization pursuant to § 1421(c) or § 1447(b). See Saba-Bakare v. Chertoff, 507 F.3d at 340 (discussing § 1447(b)); Bellajaro v. Schiltgen, 378 F.3d at 1046-45 (discussing § 1421(c)); Zayed v. United States, 368 F.3d at 905-06 (discussing § 1421(c)). We now join them in reaching the same conclusion.

In Zayed, in which the plaintiff sued under § 1421(c) to challenge a denial of naturalization, the Sixth Circuit observed that the scope of a district court's review authority under § 1421(c) "cannot be any greater than the authority of the Attorney General to consider the petition in the first place." 368 F.3d at 906, quoting Apokarina v. Ashcroft, 232 F. Supp. 2d 414, 416 (E.D. Pa. 2002), remanded, 93 Fed. Appx. 469 (3d Cir. 2004). The Sixth Circuit applied the same reasoning to remedial authority, concluding that a district court's authority to grant naturalization under § 1421(c) could not be greater than that of the Attorney General, to whom Congress had granted "'sole authority to naturalize persons'" in the first instance. Id. (quoting 8 U.S.C. § 1421(a)). Thus, if § 1429 would preclude the Attorney General from

19

granting naturalization to an alien because of pending removal proceedings, an alien could not secure that relief from a district court pursuant to § 1421(c). See id.

Citing approvingly to Zayed, the Ninth Circuit reached a similar conclusion in Bellajaro v. Schiltgen, 378 F.3d 1042. In that case, plaintiff sued for a judicial order of naturalization under § 1421(c) after the Immigration and Naturalization Service (the predecessor of USCIS) had denied his application on the ground that § 1429 precluded any consideration of his naturalization application in light of pending removal proceedings. See id. at 1043. The Ninth Circuit ruled that federal jurisdiction existed "to review the denial but the scope of review is limited to 'such' denial." Id. at 1047. Describing the agency ruling about its inability to consider plaintiff's naturalization application as "unquestionably correct," id. at 1043, the Ninth Circuit concluded that the district court could not proceed to review the naturalization application itself, much less grant naturalization or even declare the applicant eligible for naturalization but for the pending removal proceedings, see id. at 1046-47 (observing that latter declaration would be "purely advisory"). The court explained that this narrow construction of the judicial relief available to an alien pending removal "rationalizes the judicial review provision of § 1421(c) with the priority provision of § 1429." Id. at 1047.

In Saba-Bakare, where the plaintiff invoked § 1447(b) jurisdiction to complain of naturalization delay rather than denial, the Fifth Circuit took a similarly narrow view of a district court's ability to grant naturalization relief to an alien against whom removal proceedings were pending: "§ 1429 requires that Saba-Bakare wait until the termination of

20

the removal proceeding before either a district court or the USCIS entertains a question regarding his naturalization application." 507 F.3d at 340.

In adopting the reasoning of these courts, we note that nothing in the language of § 1447(b) requires the conclusion that a district court may properly naturalize an applicant when the Attorney General is statutorily precluded under § 1429 from doing so. The option of judicial relief under § 1447(b) arises only in response to an executive branch "failure to make a determination" on a naturalization application within the prescribed time. See Etape v. Chertoff, 497 F.3d at 386 (noting that intent behind § 1447(b) was "to ensure that applicants had judicial recourse when the [executive] failed to act" (emphasis added)). A "failure" is generally understood to reference the "omission of an expected action, occurrence, or performance." Black's Law Dictionary 631 (8th ed. 2004). Plainly, an action cannot be "expected" when it is proscribed by law.

While we refrain here from deciding the scope of "failure[s]" that would establish jurisdiction under § 1447(b), see supra at **[16 & n.6]**, even if jurisdiction is assumed, this language informs the narrow circumstances under which a district court should undertake to decide a naturalization petition itself. See 8 U.S.C. § 1447(b) (providing that courts with jurisdiction "may either determine the matter or remand the matter" (emphasis added)). "Judicial intervention should . . . be reserved for those rare circumstances in which CIS unnecessarily delays the adjudication of an application . . . ." Manzoor v. Chertoff, 472 F. Supp. 2d 801, 809 (E.D. Va. 2007) (emphasis added). As much as the statutory framework permits district courts under § 1447(b) to evaluate naturalization petitions where USCIS

21

improperly neglects to do so, it would seem to work against the framework set forth in §§ 1447 and 1429 for the district court to undertake such an evaluation where Congress has expressly prohibited the Attorney General from doing so.

Mindful that the animating principle behind § 1447(b) relief is the need to protect against executive delay, we conclude that Congress did not contemplate judicial orders of naturalization under circumstances where Congress has called an explicit statutory halt to the executive's ability to give any further consideration to an alien's naturalization application until removal proceedings end. Like the Sixth Circuit, we think district court authority to grant naturalization relief while removal proceedings are pending cannot be greater than that of the Attorney General. See Zayed v. United States, 368 F.3d at 906. To hold otherwise would be to restart the race that Congress attempted to end between naturalization and removal proceedings in the Internal Security Act of 1950 and various successor statutes, see Shomberg v. United States, 348 U.S. at 544, in circumstances where that race would appear particularly inappropriate, i.e., where information belatedly comes to the executive's attention indicating not only that an alien's naturalization application may have been improvidently granted but also that the alien should, in fact, be removed from the United States.

In concluding that an alien cannot secure naturalization from either the district court or the Attorney General while removal proceedings are pending, we are mindful of the concern, voiced by district courts outside this circuit, that such a construction of § 1447(b) might allow the executive to initiate removal proceedings to obstruct judicial consideration

22

of naturalization applications. See Kestelboym v. Chertoff, 538 F. Supp. 2d 813, 818 (D.N.J. 2008) (citing Ngwana v. Att'y Gen. of the United States, 40 F. Supp. 2d 319, 321 (D. Md. 1999)). We note that Ajlani has not alleged such abuse in this case, nor does the record support such an accusation. Of course, we need not categorically rule out the possibility of such abuse in every case to conclude that it does not warrant a different result in this case. Cf. Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 491 (1999) (holding that court need not "rule out the possibility of a rare case" to resolve present controversy). In any event, a colorable claim of such abuse is appropriately addressed on a case-by-case basis through litigation to terminate unwarranted removal proceedings. See generally Ali v. Mukasey, 524 F.3d 145, 147-50 (2d Cir. 2008) (discussing administrative actions to terminate removal proceedings and observing that court's ability to review such actions depends on petitioner raising constitutional claims or questions of law). The possibility does not warrant a construction of § 1447(b) that would allow district courts to grant citizenship under circumstances where Congress has expressly prohibited the executive, charged with primary naturalization responsibility, from even considering a naturalization application.

Accordingly, we conclude that the district court properly dismissed Ajlani's § 1447(b) claim for failure to state a claim on which naturalization relief could be granted while removal proceedings were pending. To the extent Ajlani faults the district court for dismissing his § 1447(b) claim rather than holding it in abeyance pending the conclusion of his removal proceedings, we identify no error because we do not understand the district court to have foreclosed the possibility of refiling if removal proceedings are resolved favorably

23

to Ajlani.  If Ajlani is ordered removed, the available judicial relief is that provided in 8 U.S.C. § 1252(a)(2)(D).

**III.    Conclusion**

To summarize, we conclude:

(1) the district court lacked jurisdiction to review the propriety of the removal proceedings pending against Ajlani; and

(2) in light of 8 U.S.C. § 1429, the pendency of those removal proceedings precludes Ajlani from stating a claim for relief under 8 U.S.C. § 1447(b) in the form of an order either (a) compelling defendants to admit Ajlani to United States citizenship, or (b) directly granting his naturalization.

Accordingly, the district court's judgment of dismissal is AFFIRMED.